STATE, *Ex Rel.*, THE WEST VIRGINIA-
PITTSBURGH COAL COMPANY, *et al.*

*v.*

CHARLES ENO, *et al.*

(No. 10285)

Submitted January 16, 1951. Decided March 1, 1951.

FOX, PRESIDENT, and HAYMOND, JUDGE, dissenting.

*Charles L. Ihlenfeld,* for plaintiffs in error.

*Pinsky & Mahan, Abraham Pinsky,* and *Walter E. Mahan,* for defendants in error.

GIVEN, JUDGE:

Defendants, Charles Eno, as an individual and as President of Local No. 6231, United Mine Workers of America, District No. 6, Paul W. Murphy, as an individual and as Committeeman of Local No. 6231, United Mine Workers of America, District No. 6, and William Fillinger, were convicted of criminal contempt in the Circuit Court of

Brooke County, for having violated an injunction decree of that court. A sentence of nine months in the Brooke County jail and a fine of one thousand dollars was imposed upon each of the defendants, on January 20, 1950. A joint petition of defendants, praying a writ of error and supersedeas, was filed in this Court, on the 27th day of February, 1950. The writ prayed for was granted by the Court on the 25th day of May, 1950.

On December 23, 1949, the West Virginia-Pittsburgh Coal Company, a West Virginia corporation, and others, filed their bill of complaint in the Circuit Court of Brooke County, praying an injunction against defendants, Eno, Murphy and others, to require them to refrain from interfering with the production of coal by plaintiffs. A temporary injunction was issued the same day restraining the "defendants, all named above, their agents, representatives, employees, associates and confederates, * * *."

"(1) From attacking, assaulting, coercing, obstructing, threatening or intimidating in any manner and at any place any employee or other person working or desiring to work for plaintiff West Virginia-Pittsburgh Coal Company, or any member of the family or household of any such employee or person;

"(2) From destroying or damaging any property, real or personal, belonging to the plaintiff West Virginia-Pittsburgh Coal Company, or to any person working or desiring to work for said plaintiff Coal Company;

"(3) From destroying or damaging any property, real or personal, of any of the individual plaintiffs named above, and those similarly situated;

"(4) From doing any act to prevent the plaintiff West Virginia-Pittsburgh Coal Company from operating its tipples, mine and mining plants, or to prevent the individual plaintiffs named above and those similarly situated and desiring to return to work, from so returning to work and continuing to work for the plaintiff West Virginia-Pittsburgh Coal Company;

"(5) From congregating, assembling or trespassing and continuing to congregate, assemble or trespass upon the premises or property of the said plaintiff West Virginia-Pittsburgh Coal Company;

"(6) From in any way interfering with, disturbing or preventing the normal conduct of the business of the plaintiff West Virginia-Pittsburgh Coal Company, a corporation, or the rights of the individual plaintiffs named above and those similarly situated who may likewise desire the protection of this Court, to work for the plaintiff West Virginia-Pittsburgh Coal Company, and to earn a livelihood for themselves and their families without fear of bodily injury or threats of violence to themselves, their families or their property on account thereof, and from obstructing or interfering with said plaintiffs named above and other employees of said plaintiff West Virginia-Pittsburgh Coal Company, while going to or returning from their working places;

"(7) From in any way interfering with, disturbing or preventing the operation of trucks hauling coal from said mines while on the public highways;".

On the 16th day of January, 1950, the plaintiffs in the injunction proceeding filed their petition therein, praying that a rule issue against Eno, Murphy and Fillinger, and that they be held to answer for contempt of the injunction decree. The petition charged violations of the injunction decree in that Eno and Fillinger "* * * did attack, asault, coerce, obstruct, threaten and intimidate James C. Marker and Robert Campbell, the operator and oiler respectively of a drag line owned by the West Virginia-Pittsburgh Coal Company and operating on its premises in Cross Creek District, Brooke County, West Virginia, and Boyd Sutler and Maurice Jones, the operator and oiler respectively of a stripping shovel being then and there used and operated by the West Virginia-Pittsburgh Coal Company on its premises in Cross Creek District, Brooke County, West Virginia; that the said Paul W. Murphy, as an individual and as Committeeman of said Local Union No. 6231, trespassed upon the premises of

the West Virginia-Pittsburgh Coal Company where its operations are being conducted in Brooke County, West Virginia, on the morning of January 13, 1950, between the hours of 12:00 Midnight of January 12-13, 1950 and 5:00 A. M. of January 13, 1950; * * *."

The petition also charged, "on information and belief", that Murphy "* * * damaged an oil storage tank, the property of the West Virginia-Pittsburg Coal Company, located on its premises near the St. John's Road in Cross Creek District, Brooke County, West Virginia, by severing an oil line and opening the valves of said storage tank, allowing 17,000 gallons of fuel oil to be emptied into the ground from said tanks and thereby causing damages in the amount of approximately $2,200.00;".

The three defendants were jointly charged with having "* * * congregated, assembled and trespassed upon the premises of the West Virginia-Pittsburgh Coal Company in Cross Creek District, Brooke County, West Virginia, between the hours of 12:00 Midnight January 12-13, 1950, and 5:00 A. M. January 13, 1950.

"That the said Charles Eno, as an individual and as President of said Local Union No. 6231, Paul W. Murphy, as an individual and as Committeeman of said Local Union No. 6231, and William Fillinger, between the hours of 12:00 Midnight, January 12-13, 1950 and 5:00 A. M. January 13, 1950, interfered with, disturbed and prevented the normal conduct of the business of the plaintiff West Virginia-Pittsburgh Coal Company and its employees who were working on the stripping operations of said Company in Cross Creek District, Brooke County, West Virginia, by the aforesaid acts."

A rule in contempt was issued by the circuit court, made returnable at the court house of Brooke County on the 20th day of January, 1950, at 9:30 A. M. An attested copy of the order was served upon Eno and Murphy on the 18th of January, and upon Fillinger on the 19th of January, 1950. In the forenoon of January 19, 1950, defendants consulted Charles L. Ihlenfeld, an attorney at

law with offices in Wheeling, West Virginia, approximately sixteen miles from the county seat of Brooke County, and who had represented defendants in the proceeding wherein the injunction decree was entered. The attorney advised defendants that it would be necessary for them to file an answer to the rule, but apparently nothing further was done in preparation for a hearing of the matter at 9:30 the next morning. The defendants, with their attorney Ihlenfeld, appeared at 9:30 on the morning of the twentieth and, after certain preliminary motions were disposed of by the court, the attorney for defendants advised the court as follows:

"If the court please, at this time on behalf of the three named defendants, I would like to move for a continuance of this hearing on these grounds: I understand through the newspapers that there was a hearing here on Monday of this week. I left town for the city of Charleston to be in the Supreme Court of Appeals on Tuesday. I had to leave town before noon on that day and did not return until Wednesday. I understand that the rule which these men are here in response to this morning was not served upon them until late Wednesday afternoon of this week. They appeared in my office immediately before noon on yesterday for the first time. This is a criminal matter and, I believe, deserves the greatest consideration that I, as their attorney, can possibly give it. I respectfully represent to the court at this time I have had absolutely no time to prepare a written answer, which we are entitled to file, and that it has just been within the past ten minutes that I have seen—and I have not even read the petition for attachment, which in this case probably would amount to an indictment of these men. I am not advised as to what action I should take in reference to the indictment, technically, even at this time, let alone consulting with these persons properly and any witness they may have which would permit them to present their case in a proper manner. I think it would be to their prejudice—in fact, I know it would be to their prejudice —to continue with this hearing in any particular at this time. I am not prepared even to cross-examine any

witnesses which the complainants may present, because I don't know what the defense will be. I therefore ask the court for a reasonable continuance of at least a week or ten days."

The motion for the delay of the hearing was opposed by counsel for plaintiffs and the court announced that the defendants would be given until 11:00 A. M. of that day, or a period of forty-five minutes according to a statement of the attorney for defendants, to prepare for trial and file an answer, the court then indicating that the court reporter would be available to defendants for assistance in the preparation of the answer. The court also advised defendants that a room in the court house would be available for their use and that compulsory process would be awarded for any witnesses named by them. After considerable further colloquy between the judge of the court and counsel, the judge announced: "Now, the court can't see any reason, taking everything into consideration, for postponing this case to later date. * * *." Counsel then stated: "If the court please, again I wish to express my appreciation for your offer, but I do feel even if the court desires to proceed and does proceed this morning it would be impossible for me to be prepared to put any testimony on, because I don't know if these men have other witnesses or whether they should be summoned if they do have other witnesses. I don't know the content of their answer, and I feel they are entitled to have their case stated just as clearly as this has been here."; and declined to attempt to prepare for trial at 11:00 A. M. of that day. Thereupon the court overruled the motion for the postponement of the hearing and defendants excepted.

The court then received a plea of not guilty from each of the defendants and proceeded with the hearing of the testimony offered by the State. Seventeen witnesses testified on behalf of the plaintiffs. Counsel for defendants remained present at the hearing but participated therein only to the extent of making motions to exclude evidence, and of making exceptions to actions of the court. At the completion of plaintiffs' evidence, about

2:00 P. M., the court advised defendants that if they desired to file an answer or to present any witnesses in their defense they would be given until 10:00 A. M. of the following day. Counsel for defendants declined the offer, the court and Mr. Ihlenfeld stating:

"Mr. Ihlenfeld: If the court please, I would like to preface any remark I may make in response to your direct question of assurance, that this is a criminal case. These cases usually proceed when both sides are prepared to present, as well as defend, without the lapsation of any time intervening. The period to cross-examine has gone by. I feel my motions are based on sufficient grounds. While I could assure this court definitely that I could prepare an answer and have it in the hands of the court tomorrow, I could not with any assurance whatsoever assure this court I could adequately defend these men, who are charged with a crime, at that time.

"The court: Well, am I to understand, then, it will not be done for the reasons you feel are proper in your own mind?

"Mr. Ihlenfeld: It cannot be done."

No affidavits were filed by defendants at the time the motion for postponement was made, but the court granted them the privilege of filing such affidavits later, and the affidavits later filed are substantially in accord with the representations made to the court at the time.

It appears from the evidence adduced that at about 2:30 A. M. on January 13, 1950, defendants Fillinger and Eno appeared on the premises from which coal was being produced by the West Virginia-Pittsburgh Coal Company and, after making certain threats, Fillinger then having in his hand a large wrench and Eno having in his hand a club, forced two of the employees of the coal company to cease operating a machine. While threatening these two employees, Fillinger stated: "I know I am going to jail. I will be in jail tomorrow, but I don't give a God damn." Later that morning, about 4:00 A. M., two other employees, operating a power shovel for the coal com-

pany, were stoned and forced to cease operating the shovel, considerable damage being done to the machine by the stoning. One of the employees testified that he thought one of the two men throwing the stones was Eno, and the other employee working on the shovel stated he had no idea who the two men were. Having been advised of trouble on the coal company premises; Walter Valero, a representative of the coal company, carrying an automatic rifle, went to a point on the premises where he supposed the persons interfering with the work would make an exit and succeeded in intercepting Fillinger and Eno, who were taken to the offices of the coal company. Nick Valero, also a representative of the coal company, after learning of the trouble was driving in an automobile, with another employee of the company, toward the premises when Murphy, in his own automobile, was observed and recognized on a side road on the coal company premises. Valero, by use of an automatic rifle, forced Murphy to wait at that point until the arrival of officers who took him into custody. At the jail a leather jacket was taken from Murphy and evidence was produced to show that the jacket possessed a strong odor of oil, apparently in an effort to connect Murphy with the loss of approximately twenty-two hundred dollars worth of fuel oil stored on the premises, by the cutting of a hose attached to storage tanks, thus permitting the oil to run from the tanks onto the ground, and which loss occurred sometime during the night of January 12-13.

At the trial the wife of the defendant Murphy was called by the court, on its own motion, and, over objection of defendants, sworn as a witness. The record then shows:

"By the court:

"Q. Mrs. Murphy, you are the wife of the defendant Paul Murphy, is that correct?

"A. Yes, sir.

"Q. You may tell us whether or not you received from the sheriff's office or from anyone in the sheriff's office along about the—what were those dates—the 16th—

"Mr. Pinsky: Just a moment, your Honor.

"(Mr. Pinsky talked with the court at the bench, the reporter not being present.)

"The Court: Mrs. Murphy, I am not going to require you to testify on this point. You may take your seat.

"Mr. Ihlenfeld: May the record show she has been called?

"The Court: Yes, and the court excused her because the court is advised that the evidence that was to be sought from her can be furnished by somebody else."

Defendants assign seventeen points of error, but we believe the following propositions include all matters complained of:

Was error committed by the court: (1) In refusing to grant defendants' motion for a postponement of the trial; (2) in calling as a witness the wife of defendant Murphy, requiring her to be sworn as a witness and to testify as above indicated; (3) in conversing with counsel for the plaintiffs at the bar of the court during the trial, the defendants not being present; (4) in holding that the evidence established notice of the injunction decree on the part of. Fillinger, he not being a party named in the injunction proceeding; (5) in holding that circumstantial evidence was sufficient to connect Murphy with the destruction of the fuel oil; (6) in requiring the defendants to plead after they had indicated their election to refuse to plead; and (7) in imposing the nine months jail sentence and one thousand dollar fine upon each of the defendants, the contention of defendants being that the punishment was "cruel and unusual" and was not in "proportion" to the offense committed?

In view of this Court's decision as to the disposition of this case, and because of the fact that upon a new trial the questions will probably not arise, we think it unnecessary to consider any of the matters complained of, other than the refusal of the court to grant defendants'

motion for a postponement of the trial, or to discuss the evidence except as it relates to that question.

A motion for a continuance or postponement of a trial is addressed to the sound discretion of the trial court, *State* v. *Jones,* 84 W. Va. 85, 99 S. E. 271. In a criminal contempt proceeding rules of evidence governing criminal trials apply, and guilt must be established beyond reasonable doubt. *State* v. *Ralphsnyder,* 34 W. Va. 352, 12 S. E. 721; *State* v. *Bittner,* 102 W. Va. 677, 136 S. E. 202, 49 A. L. R. 968; *State* v. *Devore,* 134 W. Va. 151, 58 S. E. 2d 641. The right of a defendant in a criminal case to be represented by counsel includes the right to effective assistance of counsel, and the refusal to allow counsel sufficient time to prepare for trial is a denial of that right. *Simpson* v. *Stanton,* 119 W. Va. 235, 193 S. E. 64; *Powell* v. *Alabama,* 287 U. S. 45, 77 L. ed. 158, 53 S. Ct. 55, 84 A. L. R. 527; *White* v. *Ragen,* 324 U. S. 760, 89 L. ed. 1348, 65 S. Ct. 978; *United States* v. *Bergamo,* 154 Fed. 2d 31. Even where a defendant admits the charge of contempt, he may be entitled to be heard, by witnesses and argument, in mitigation of the offense. *Cooke* v. *United States,* 267 U. S. 517, 69 L. ed. 767, 45 S. Ct. 390.

The rule issued on the 16th of January, 1950, but was not served on two of the defendants until sometime the eighteenth, and on the other defendant sometime the nineteenth, the hours of service not being shown. There is some indication that the defendants had knowledge of the issuance of the rule prior to the time of service, but we think this not established. Defendants desired that they be represented at the hearing on the rule by the attorney who had represented them in the injunction proceeding and who would probably be in better position, for that reason, than any other attorney to advise them, and who would be in position to more quickly prepare for any trial. The attorney having left his office on the sixteenth and not having returned until sometime the eighteenth, defendants appear to have been unable to consult him before the nineteenth, about 10:00 A. M., at his office in Wheeling. In these circumstances there ap-

pears no neglect or unnecesary delay on the part of defendants in employing an attorney.

Between the time the attorney first learned of the issuance of the rule and was requested to represent the defendants, and the hour set for the hearing on the rule, he had less than twenty-four hours to confer with defendants, obtain copies of pleadings at the county seat of Brooke County, make such necessary investigation of the matters involved as required, prepare an answer or answers, and subpoena witnesses if determined necessary upon investigation. Can we say that an attorney, though familiar with the facts and circumstances of the injunction proceeding, could possibly have adequately prepared for the trial? The charges against defendants were very serious, involving possible jail sentences and heavy fines. The petition for the rule charged the defendants with violation of practically every act prohibited by the injunction decree, making the course of defense uncertain or doubtful, and such matters were required to be considered, not as to one defendant, but as to each of the three. It must be noted that the motion was for a "week or ten day" postponement, and not for a continuance to some future term of court. Such a motion would strongly indicate absence of any intent or effort to unduly delay the hearing. It will be noted that plaintiffs did not obtain the rule against defendants for more than three days after the time of the alleged violations. In these circumstances we are of the opinion that the motion should have been granted, not necessarily for the week or ten days, but for a sufficient period of time to have afforded counsel for defendants opportunity to adequately prepare for the trial. To hold that counsel should have prepared for trial in less than twenty-four hours after having been employed would, we think, have the effect of denying the defendants a fair trial, and denying unto them the effective assistance of counsel to which they were entitled.

"Due process requires that the defendant on trial in a state court upon a serious criminal charge and unable

to defend himself, shall have the benefit of counsel, and that he shall not be forced to trial with such expedition as to deprive him of the effective aid and assistance of counsel." Headnote 2, *White* v. *Ragen, supra.*

The plaintiffs contend that after the completion of their evidence about 2:00 P. M. of the twentieth, the court advised defendants that they could file an answer and present any evidence in their behalf at 10:00 A. M. of the following day if they so desired, and that any error in refusing postponement was thereby rendered non-prejudicial. We think, however, plaintiffs overlook the right of defendants to have time to adequately prepare for trial before the commencement thereof, and before the plaintiffs commenced the introduction of evidence, at a time when the right of cross-examination could be exercised intelligently, and that the refusal of the court to grant sufficient time constituted prejudicial error.

We are not unmindful of the importance of having criminal contempt proceedings disposed of speedily. Orders of courts must be respected and obeyed, and courts must not be lax or hesitant in punishing those who violate their orders. This is necessary for the protection of the courts and of the public; but it is also necessary, for the protection of the courts and of the public, that defendants charged with violations of law, including such criminal contempt charges as are here involved, be accorded sufficient time to properly prepare for trial, even though guilt may seem apparent, and this includes the right to be represented by counsel and the right of counsel to have adequate time to prepare for trial. The State and the Federal Constitutions so require. *Simpson* v. *Stanton, supra; White* v. *Ragen, supra.*

The judgment of the Circuit Court of Brooke County is reversed, and defendants are awarded a new trial.

*Judgment reversed;*
*new trial awarded.*

Fox, President, dissenting:

I am not in accord with the result reached by the majority in this case. I do not question the statements of law contained in the two syllabus points, but I do not think the facts in the case at bar require that the defendants be given a new trial under the principles stated in said points. Of course, a person charged with a criminal offense, or criminal contempt, is entitled to a fair trial, the benefit of counsel, and a reasonable opportunity to prepare for his defense. But, in cases of contempt where the power and dignity of a court is involved, the matter should be firmly and promptly disposed of.

We start out with the proposition that this is a country governed by law, and that our courts are entitled to respect and that their orders and decrees should be obeyed. No litigant should be permitted to take the law into his own hands, and when he does so he cannot complain if the courts are quick to respond to this challenge to their power. The facts involved in this controversy are not discussed in detail in the majority decision; but we know this: The Circuit Court of Brooke County issued an injunction restraining certain people from engaging in certain practices; and we know that it is alleged in the contempt proceeding that the defendants named disregarded this injunction. In the trial had, the court found sufficient evidence to justify the fines and imprisonments imposed. What the court would have done had the defendants testified or furnished other proof tending to show their innocence, we do not know. They did not testify nor introduce the testimony of others, because they say that the trial court refused to give them time before trial to prepare therefor. Whether or not the trial court erred in that respect is the sole question involved herein.

As held by the majority, a motion for a continuance is addressed to the sound discretion of the trial court under all the circumstances of the case. In this case that discretion was exercised by the trial court when a re-

quest by the defendants for a delay of a week or ten days for the trial of the case was refused by said court. We must bear in mind that this controversy had been in existence several days, and that defendants present counsel was employed at the beginning of the litigation, and was familiar with the circumstances and the situation generally. While the rule in the contempt proceeding was issued on January 16, 1950, it may not have been served until a day or two later; and it is true, that on account of the absence of their counsel, defendants did not have an opportunity to consult with him until probably the 19th of January, and the hearing on the matter was held on January 20. On the face of it, it would seem that this was a short time in which to prepare for a hearing of a case of this character, but for the fact that both defendants and their counsel were fully familiar with what was involved, and the further fact that the defendants must have known who their witnesses would be, and what the facts were as to themselves. In such circumstances, we cannot hold as a matter of law that the circuit judge abused the discretion which he undoubtedly had to require the case to be heard on the return day of the rule. The circumstances of this case indicate that the defendants were not prejudiced; that they were then as well able to make their defense as they would ever be. The circuit judge was acquainted with the facts and the situation generally, and his judgment was worth more than the judgment of this Court who deal with the situation from afar. There had been a brazen defiance of the decree of the Circuit Court of Brooke County by someone. Naturally, the judge of that court felt that he could not permit that character of conduct, and that the situation called for a prompt trial and prompt punishment in the event of a finding of guilt. When, in such circumstances, we overrule a judgment of a circuit court, we weaken its power, cause it to lose prestige, and strike a deadly blow against courts everywhere within our jurisdiction. Not only this: We invite lawlessness and at the same time palsy the arm of the Court as an agent of the State in the preservation of law and order.

There is another and more serious matter involved in this case, and that is the suggestion that an attorney representing persons charged with criminal contempt may go into court and attempt to lay down the terms upon which he and his clients will appear and try the case. We do not mean to criticize counsel. If he believed that he would require more time to prepare for the trial of his case, it was his duty to appear and move the court for a continuance or postponement of the case, and this is what he did. But after the court had denied his motion, we do not think he was justified in refusing to present to the court his defense, to the extent that he was able to make it. An opportunity was afforded him to prepare his plea. True, the time allowed was short, but a simple plea of not guilty would have covered all matters of fact. After the trial had progressed to the point where the State had completed its case, defendants were given until the following day to present their evidence. True, this offer was made after the evidence for the State was presented, and an opportunity for cross-examination had possibly passed, although that might have been corrected, had request for right to cross-examination been made. All of these offers to give the defendants time in respect to filing pleas and offering evidence were refused. These refusals were couched in most courteous terms, but the whole matter resolved itself into this: The defendants, through their counsel, asked for a postponement for a specific time, and when the trial court refused that request, they declined to make a defense, and, in effect, told the court "if you will not play the game on our terms, we will refuse to play." If this attitude toward courts is to be approved by this Court, what becomes of the standing, the power, and the prestige of the judiciary of this State.

We do not want to be understood as wishing to depart in the slightest degree from the fundamental rules of law under which a person is entitled to a fair trial, the benefiit of counsel, and full opportunity to present his defense. I do not disagree with the statements in the

majority opinion on that point. That, however, is always a relative matter. In some cases time is required to familiarize counsel with the facts of the case, and in others little time is required for such purpose because he already knows the facts. This, we think, is such a case. The charges against the defendants were acts of violence and destruction of property. They either did or did not commit such wrongs. They could have easily, and in a short time, presented all of the proof they had bearing upon their guilt or innocence. They knew what the charges were. The circuit court being familiar with all of these facts, it felt that a trial of the case should not be delayed. On reaching this conclusion, the defendants refused to participate in the trial, and withheld evidence which might have established their innocence, or at least raised doubt as to their guilt. They failed to testify. In these circumstances, we think the court was entirely justified in hearing the charges and making its finding. The correctness of this finding is not discussed in the majority opinion, but as I view the case the evidence supports the finding and judgment of the trial court. The only issue decided was whether the trial of the case should have been postponed. In the circumstances of this case, that matter should have been left to the very wide discretion of the trial court, and, in my opinion, the exercise of that discretion was not abused in this case.

I am authorized to state that Judge Haymond joins in the views herein expressed.