STATE OF WEST VIRGINIA

*v.*

PHILLIP BUSH

(No. 14005)

Decided June 5, 1979.

*Franklin D. Cleckley* for defendant.

*Chauncey H. Browning*, Attorney General, *Joseph C. Cometti*, Assistant Attorney General, for plaintiff.

McGRAW, JUSTICE:

Phillip Bush appeals from his felony conviction for forcible rape, *see*, W. Va. Code § 62-2-15 [1965].[1] His pri-

---

[1]This section, under which the defendant received an indeterminate ten to twenty year sentence, provides as follows:

mary claim is that the trial court committed error in denying defense counsels' motion for continuance, thereby denying him effective assistance of counsel as guaranteed by the Constitutions of West Virginia and the United States.

We find the trial court abused its discretion in refusing to grant a continuance, and we reverse the conviction.

The significant pre-trial events which give rise to this assignment of error are as follows: On February 12, 1975, the defendant was arrested and charged by warrant with forcible rape. A preliminary hearing was held on February 18, 1975, and the defendant was bound over to the March term of the Marion County Grand Jury. On March 10, 1975, a true bill was returned. A trial date was set for April 28, 1975, but the record does not reveal when this trial date was set or whether the defendant was ever formally arraigned prior to the day of trial. Prior to trial, the defendant remained lodged in the Marion County jail.

Based on the undisputed facts as set forth in the defendant's motion for a continuance, and affidavits filed thereafter in conjunction with motions to set aside the verdict and award a new trial, the salient facts surrounding the defendant's acquisition of counsel and the facts and circumstances surrounding the trial court's denial of a continuance may be examined.

Shortly after the defendant was arrested he contacted a local attorney, Mr. Brent Beveridge, seeking his assistance in obtaining bond. Despite counsel's efforts, the court refused to set bond. Thereafter, Beveridge represented the defendant in the February 18, 1975 prelimi-

---

If any male person carnally knows a female person, not his wife, against her will by force ... he shall be guilty of a felony, and, upon conviction ... shall be punished with confinement in the penitentiary for life ...: Provided, that the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be punished with confinement in the penitentiary for not less than ten nor more than twenty years. ...

nary hearing upon the request of a second attorney, Mr. Franklin D. Cleckley, and contacted a court reporter to attend and record the hearing. Neither Mr. Beveridge nor the court reporter received any compensation for his services at the preliminary hearing. Mr. Beveridge also appeared in chambers in late February concerning bond but bond was again denied.

Mr. Beveridge met with the defendant in the Marion County jail on at least two occasions, primarily for the purpose of discussing the possibility of petitioning this Court for bond. Thereafter, he spoke with the defendant and his wife concerning the necessity of making financial arrangements to cover his past and future services, along with the court reporter's fee. Discussions were also had concerning the employment of either Mr. Cleckley or Mr. Beveridge, or both, but no agreement was reached.

After the first week in March, Mr. Beveridge said he had little if any contact with the defendant, and did not discuss the merits of the case, file written motions or discuss any plea bargaining arrangements with the prosecutor's office. Furthermore, he did not attend the hearing at which the trial docket was set, T.R.C. III, and never made any representation to the court indicating he represented the defendant. Mr. Cleckley's pre-trial involvement in the case was even more limited.

By letter dated April 18, 1975, the prosecuting attorney advised Mr. Cleckley of the trial date. Mr. Cleckley informed the prosecuting attorney by letter that he had not been retained to represent the defendant and he requested that the circuit court bring the defendant before the court so that the counsel issue might be resolved properly.

On Friday, April 25, 1975, while Mr. Cleckley was attending an unrelated hearing, the court called the defendant to inquire respecting his employment of counsel. The defendant expressed a desire to retain Mr. Cleckley as counsel and indicated that he would advise the court

by the following Monday whether he could raise the necessary funds. The court agreed to this procedure, and continued the case to the next term of court. About an hour later, however, the court gave Mr. Cleckley a hand-written note which said that the trial would be held on Monday, April 28, 1975. The note indicated the judge engaged in an *ex parte* conversation with the prosecuting attorney and concluded that Mr. Beveridge had represented the defendant following his arrest, and that the case would go to trial with Mr. Beveridge as counsel.

Mr. Cleckley and Mr. Beveridge, avoiding the wrath of the court, represented the defendant at trial but neither was appointed to represent the defendant and neither has ever been compensated for his legal services.

On the morning of the trial, the defense attorneys moved for a continuance on the ground that counsel had not had ample time to prepare an adequate defense. In addition to the facts previously set forth, they alleged in support of the motion that neither attorney had been retained by the defendant nor had either of them done anything in preparation for trial. More specifically, counsel had not: (1) picked up a copy of the indictment; (2) prepared pre-trial motions; (3) interviewed the defendant or any other witnesses in preparation for trial; (4) prepared *voir dire* examination, opening statements, a case strategy, instructions or any other matters or motions necessary for the defense of the case; and, (5) neither counsel had requested a transcript of the preliminary hearing nor was one available.

In conclusion, counsel alleged that neither the court nor the prosecuting attorney had offered a reason why the case could not be tried at a later time that would afford counsel a fair and adequate opportunity to prepare a defense consistent with the mandate of West Virginia Const. Art. III, § 14; and that to proceed to trial under the circumstances constituted trial by ambush and was contrary to established notions of decency and fair play. The trial court summarily denied the motion,

impaneled the jury, and proceeded with the trial of the case.

## I

There is only one decision in this jurisdiction in which this Court considered the issue raised in this appeal. In *State ex rel. West Virginia-Pittsburgh Coal Co. v. Eno*, 135 W. Va. 473, 63 S.E.2d 845 (1951), a sharply divided court reversed the conviction of the three members of the United Mine Workers of America who were convicted of criminal contempt for the violation of an injunction decree.

Briefly, the facts there were that a rule in contempt was issued by the trial court, returnable on January 20, 1950. Two of the union members were served on January 18th and the other was served on January 19th. Because the attorney who represented them in the initial injunction proceeding was not available for consultation until approximately twelve noon on the 19th of January, counsel requested a continuance in order to prepare an answer, determine a defense and prepare for cross-examination. Despite the trial court's offers of brief recesses to enable the defendant to prepare an answer and prepare a defense, counsel politely refused, consistently asserting his inability to defend without additional time. He did not cross-examine any of the State's witnesses or offer any testimony on behalf of the defense.

In syl. pt. 2 in *Eno* the Court held "[t]he right guaranteed by the State and Federal Constitutions to a person charged with a criminal violation to have effective assistance of counsel, cannot be abrogated by denying counsel, if timely employed, sufficient time to adequately prepare for trial."

The *Eno* court did not base its ruling on the nature of the representation afforded defendant at trial; that is, it did not analyze the record to determine how or if the defendants were prejudiced or how their case would have been better prepared had the continuance been granted. The holding rests solely on the inadequate

preparation time afforded defense counsel. "The right of a defendant in a criminal case to be represented by counsel includes the right to effective assistance of counsel, and the refusal to allow counsel sufficient time to prepare for trial is a denial of that right." [citations omitted]. *Id.* at 482, 63 S.E.2d at 850. The dissenters were unwilling to conclude, as a matter of law, that the trial court abused its discretion.

For several reasons, some based on recent developments, the most important factor in considering claims of the sort advanced here is the length of time between the employment or appointment of counsel and the trial of the case. Obviously, there is a substantial relationship between time to prepare for a criminal trial and the quality of representation provided by the defense. As the Court said in *Eno* "[t]o hold that counsel should have prepared for trial in less than twenty-four hours after having been employed would, we think, have the effect of denying the defendants a fair trial, and denying unto them the effective assistance of counsel to which they were entitled." *Id.* at 483, 63 S.E.2d at 851.

Our recent pronouncement in *Housden v. Leverette,* ____W. Va.____, 241 S.E.2d 810 (1978) also demonstrates the importance of the length of time between appointment or retention of counsel and trial. In syl. pt. 1 we adopted a procedural rule that "[a]n interval of one day or less between the appointment of counsel and trial or the entry of a guilty plea raises a rebuttable presumption that the defendant was denied effective assistance of counsel and shifts the burden of persuasion to the State."

We also observed in *State ex rel. Partain v. Oakley,* ____W. Va.____, 227 S.E.2d 314 (1976) that criminal defense work is significantly more difficult and complex than it was just a few years ago, and that the conduct of criminal defense attorneys is subject to more exacting scrutiny under the *State v. Thomas,* ____W. Va.____, 203 S.E.2d 445 (1974) standard for effective legal representation. Effective representation by an attorney requires

that he do more than merely insure that the trial is not a farce or mockery of justice. Rather, counsel must exhibit the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law. Prior to the 1974 pronouncement in *Thomas* there had never been a criminal conviction reversed in this jurisdiction on the specific ground of inadequate assistance of counsel, with the sole exception of *Eno, supra.*

The Court of Appeals for the 4th Circuit in *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977) recently reaffirmed its objective description of the competency normally demanded of counsel in criminal cases, *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir. 1968):[2]

> Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.

The American Bar Association standards relating to The Prosecution Function and the Defense Function, Section 4.1,[3] (Appr. Dr. 1971) also places a duty upon

---

[2]*See, Carter v. Bordenkircher,* ____W. Va.____, 226 S.E.2d 711 (1976) involving a claim that counsel failed to investigate facts which could have been used to impeach a prosecution witness.

[3]It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer or facts constituting guilt or his stated desire to plead guilty.

defense counsel to conduct a prompt investigation of the circumstance of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. It requires that the investigation include efforts to secure information in possession of the prosecution. This section may well have been designed to give substantive content to the dictum that the "denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense could convert the appointment of counsel into a sham. . . ." *Avery v. Alabama,* 308 U.S. 444, 446, 60 S. Ct. 321, 322, 84 L. Ed. 377 (1940).

Timely appointment and a reasonable opportunity for adequate preparation are thus absolute prerequisites for fulfillment of counsel's constitutionally assigned role of seeing to it that available defenses are raised and the prosecution is put to its proof.

Our most recent decision on continuances also reaffirms the teachings of *Eno, supra,* that our State Constitution places limitations on the admittedly broad discretion of trial courts to control their criminal dockets in the interest of orderly and expeditious justice. In the third syllabus of *Wilhelm v. Whyte,* ____W. Va.____, 239 S.E.2d 735 (1977), we held:

> There may be occasions when the denial of a continuance in a criminal trial is so arbitrary as to violate due process, and because of the particular wording in Article III, section 14 in the West Virginia Constitution, that the accused "shall have the assistance of counsel, and a reasonable time to prepare for his defense," there is, independent of the Due Process Clause in our Constitution, a constitutional right to a continuance if the defendant is not accorded a reasonable time to prepare his defense.

Applying the foregoing precedents to this case, we are of the opinion that the principles of *Eno* are controlling and that the trial court's denial of a continuance in the

circumstances of this case denied the defendant his constitutional right to effective assistance of counsel.

As indicated earlier, the record, unfortunately, does not reveal what occurred on the day the trial date was set. The record does not demonstrate that the defendant was present that day or reveal what transpired in relation to the retention or appointment of counsel. No affidavit of indigency is of record.

Although the defendant failed to procure counsel during the approximately seven weeks between indictment and trial, there is no indication that the defendant embarked upon a deliberate strategy of delaying the trial by being dilatory in the employment of counsel, nor is there any indication that the trial court was of that opinion. There is not the slightest suggestion that counsels' plea for more time was made in bad faith. In this factual vacuum we are not prepared to hold that the defendant failed to act with reasonable diligence in procuring the services of counsel. *See generally, United States v. Inman,* 483 F.2d 738 (4th Cir. 1973).

The trial court in this case ordered an attorney who had never been retained or appointed to go to trial with only a weekend for trial preparation in a case involving a possible life sentence. The denial of a continuance under the particular circumstances of this case amounted in substance to a denial of the right to effective assistance of counsel. Even though *Eno* is dispositive of the issue, we would also be compelled to reverse the conviction under the traditional standard of appellate review.

The well settled standard of review is that "[t]he granting of a continuance is a matter within the sound discretion of the trial court ... and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the

party in whose behalf the motion was made." Syl. pt. 1, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919).[4]

It is apparent from an analysis of the case law in this jurisdiction that the issues of abuse of discretion and prejudice are to be decided on a case-by-case basis in light of the particular factual circumstances presented in each case. It is also manifest that prejudice in this context is not subject to precise definition.

Because only a few West Virginia decisions address the difficult issues arising from the denial of continuance based on an inadequate time to prepare a defense, and because those that do antedate significant developments in criminal law and procedure, we have found it productive to examine the pronouncements of other courts which have reviewed such claims.[5]

The United States Court of Appeals for the Fifth Circuit in *United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976) identified several relevant factors including: (1) The quantum of time available for preparation; (2) the likelihood of prejudice from the denial; (3) the accused's role in shortening the effective preparation time; (4) the degree of complexity of the case; and (5) the availability of discovery from the prosecution.

The court also noted that it had expressly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit.

---

[4]Most of the law of continuances was developed where delay was sought based on absence of a material witness. E.g., *State v. Simmons*, 130 W. Va. 33, 42 S.E.2d 827 (1947); *State v. Lutz*, 88 W. Va. 502, 107 S.E. 187 (1921); *State v. Maier*, 36 W. Va. 757 (1892); *State v. Harrison*, 36 W. Va. 729 (1892); *See also, State v. Milam*, ____W. Va.____, 226 S.E.2d 433 (1976).

[5]*See generally*, 17 Am. Jur.2d *Continuance* § 28 (1963); 3 Wharton's Criminal Law & Procedure § 424 (1975).

In *United States v. Maxey*, 498 F.2d 474 (2nd Cir. 1974), the following relatively discrete considerations were also considered relevant to both the trial court and the appellate court: (1) Whether the plea for more time to prepare for trial is made in good faith; (2) the public interest in the speedy trial of defendants in criminal cases; (3) the time defendant has been in prison awaiting trial; and (4) the overall nature of the legal representation received.

This Court has explicitly considered some of these factors in assessing claims of an inadequate time to prepare a defense. Some of these decisions are of questionable validity today in light of constitutional developments, but they, nonetheless, merit discussion.

West Virginia's seminal decision appears to be *State v. Maier*, 36 W. Va. 757 (1892). In that case the defendant, convicted of murdering his wife and sentenced to be hanged, claimed by affidavit that insufficient time was given counsel to prepare a proper defense. The trial court's opinion, set forth in full in the appellate opinion, indicates that defense counsel had five days, excluding Sunday, to prepare for trial; that there were no intricate questions of law involved in the case; that the defendant's sole defense was insanity; that the trial docket was overcrowded; that the time allowed for preparation for trial was reasonable and sufficient in light of the defense made for the defendant; and that although more than four weeks had elapsed between the conclusion of the trial and the argument on the motion for a new trial, no evidence was produced having any tendency to produce a different verdict.

This Court, in affirming the trial court's ruling denying the continuance, noted that the accused was in custody, and by statute, unless good cause was shown, had to be tried during the same term of court at which the indictment was returned. The court also relied on the traditional rule that an appellate court in this State will supervise the action of an inferior court on a motion for continuance, but it will not reverse a judgment unless such action is plainly erroneous.

Six years later, in *State v. Lane*, 44 W. Va. 730 (1898), the Court affirmed a murder conviction over a claim that defense counsel had an inadequate time to prepare for trial. The basis for the holding was that the defendant did not show such due diligence in preparation for trial as would entitle him to a continuance. The indictment was returned at the May, 1897 term of the Grand Jury and trial did not occur until September. The defendant claimed that he made efforts to and believed that he had employed counsel until the day preceding the calling of his case for trial, when he learned the attorneys would not appear on his behalf. Finding the defendant had not exercised due diligence in preparation for trial, the court held that under the circumstances of the case the trial court's actions were not plainly erroneous.

*State v. Madison*, 49 W. Va. 96, 38 S.E. 492 (1901), affirmed a conviction even though the Court found the trial court abused its discretion. The Court examined the record and the circumstances surrounding the homicide in question and found virtually no possibility of prejudice. There it was asserted that the trial court did not give the accused time to consult his attorney and forced him into trial without time to prepare his defense. As in *Lane, supra*, the defendant believed he was represented by a law firm until shortly before trial. At about three o'clock in the afternoon, the defendant was asked by the court if he had counsel. The law firm apparently then refused to represent him, and the court appointed three attorneys to defend the prisoner, one of whom had been appointed by the court several days before. After brief consultations with the defendant, the attorneys asked the court to give them until the following morning to consult with their client and learn whether witnesses could be found who knew of facts material to the homicide defense.

The Court stated:

It seems to us that the court should have exercised its discretion otherwise; but that is not our question. The question here is whether it is

cause for reversal of the judgment. If we could see that any evidence for the accused was in existence or attainable, we might say he was prejudiced by this haste, and we could see some force in this complaint; but not a person was suggested as a probable witness; not one matter which the accused could prove, or expected to prove, as required by law. [citations omitted]. We cannot reverse when we can see no object to be attained by it. We must have something of substance on which to reverse a solemn trial. *Id.* at 97, 38 S.E. at 493.

The most recent case on the issue, *State v. Tapp*, 153 W. Va. 759, 172 S.E.2d 583 (1970), not *citing Eno, supra,* affirmed a conviction by placing considerable, if not undue, emphasis on the fact that defense counsel made only a general motion for a continuance and apparently did not expressly state that he sought the continuance based on the lack of reasonable opportunity to prepare for trial. In that case counsel was appointed about a month before trial, but two days before trial the accused sought the services of a second lawyer who was formally appointed as counsel on the day of trial.

Turning to the facts of this case, we find that the trial court abused its discretion in refusing to grant a continuance. The record discloses no reason or justification for the haste in trying this case. The attorneys had only a weekend to prepare for the trial—from Friday afternoon to the following Monday morning—in a case where without a jury recommendation of mercy the sentence would be life without eligibility for parole. Mr. Beveridge's contact with the case some eight weeks prior to trial would be of little assistance in preparation for trial, particularly where no preliminary hearing transcript was available because counsel had not ordered it transcribed. Thus, it could not be used to impeach the State's witnesses or to refresh counsels' memory.

The likelihood of prejudice stemming from the denial of the continuance is quite high. This case was an unusual, and somewhat complex forcible rape involving a

black defendant and white victim. It is undisputed that defense counsel, among other things, did not prepare pretrial motions, interview witnesses in preparation for trial, or prepare for *voir dire* examination. This is not surprising since they had less than one working day to prepare for trial.

The defense here sets forth a number of instances at trial which it claims denied the defendant his right to effective assistance of counsel because of an arbitrary refusal to grant a continuance. We need not examine each isolated incident of alleged inadequacy to determine that the defendant in all likelihood was prejudiced in his defense and is entitled to a new trial. We will, however, address one matter without considering the substantive merit of the claim.

The State called as a witness the owner of the house where the rape allegedly occurred. He testified that the defendant telephoned him from the county jail shortly after he was arrested and asked that he lie for him by saying that the defendant and prosecutrix were at his home on the night in question for about two hours and the two of them "admired" one another. According to a post-trial affidavit of this witness, this telephone conversation was secretly recorded by the police without the consent of the witness or the defendant. The witness, a long-time friend of the defendant's, stated that because the police officers recounted the telephone conversation in great detail, he was prompted to sign a statement to that effect. The witness further indicated that he did not talk to defense counsel until the day after the trial was completed.

We recognize, as the Court did in *Maier,* that an accused in custody is entitled, unless good cause be shown for the continuance, to be tried in the same term of court as the indictment. *See* W. Va. Code § 62-3-1. That "good cause" exception clearly contemplates relieving the State from its duty to try the defendant at the same term as the indictment where the defendant seeks a

continuance as a result of financial difficulties delaying the employment of counsel.

We need not go further in the analysis of probable or possible prejudice to the defendant. We are firmly convinced that the trial court abused its discretion and prejudiced the defendant by not granting a continuance.

The substantial and legitimate interest of the State in the prompt and efficient administration of the criminal justice system, and the interests of criminal defendants in the guarantee of a speedy trial cannot be allowed to erode the fundamental right to effective assistance of counsel and a fair trial.

There are other assignments which have merit. We agree that the trial court erred in admitting, over objection, testimony that the defendant on a previous occasion had brandished a gun, used strong profanity, threatened to shoot a person, and impliedly admitted he had shot other persons. The defense in this case made a timely objection to the testimony and requested an *in camera* hearing as to its admissibility. The State concedes that the testimony of the State's witness concerning a collateral crime or misconduct was improperly admitted into evidence.

The testimony was inadmissible under *State v. Thomas*, \_\_\_W. Va.\_\_\_, 203 S.E.2d 445 (1974). *See, also, State v. Nicholson*, No. 13918 (March 13, 1979) wherein it was held:

> Trial courts are cautioned, in relation to the admission of prior offenses, that the admissibility thereof should be weighed very carefully and that such evidence should be excluded if the court finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice to the defendant. Pursuant thereto, the trial court should require the State to disclose in advance, *in camera,* any evidence of collateral crimes it intends to introduce at the trial. This disclosure is designed

to permit the court to make the above determination relative to the probative value of such evidence.

The defense also assigns as error the giving of an instruction containing language identical to the instruction recently condemned by this Court in *State v. Byers*, ____W. Va.____, 224 S.E.2d 726 (1976), because it permitted "imposition of a personal standard," *Id.* at____, 224 S.E.2d at 734, as to the meaning of 'beyond a reasonable doubt.' There was only a general objection given to this instruction at the time of trial and, of course, the general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matter to which he objects and the grounds of his objection. *See,* syl. pt. 6, *State v. Angel*, 154 W. Va. 615, 177 S.E.2d 562 (1970), 10A M.J., *Instructions* § 50 (1977).

Since the judgment of conviction is reversed, we do not consider whether the error should be considered under the plain error doctrine. In the event of retrial, however, the instruction must not be given.

We find the assignment of error in which it is claimed that the now-repealed rape statute is unconstitutional must be answered in the negative in light of *Moore v. McKenzie*, ____W. Va.____, 236 S.E.2d 342 (1977).

Because it is not a crime under that law for a female over sixteen to forcibly rape a male person over sixteen years of age, the defendant contends the sex-based classification invidiously discriminates against males in violation of the equal protection and due process guarantees of the federal and state constitutions.

*Moore* held that not every sex-based classification is unconstitutional; that such classifications are not inherently suspect and therefore subject to strict scrutiny; and that "the gender-based classification under W. Va. Code § 61-2-15, served important governmental objectives and was substantially related to the achievement of the objectives. We also defer to the legislative prerogative to attack, through the passage of criminal laws,

those problems which seem most acute to the legislative mind." *Id.* at___, 236 S.E.2d at 343.

We have carefully considered the other assignments of error and find they do not warrant discussion either because they are not likely to recur in the event of retrial, or they are without merit and discussion thereof would not contribute to the development of law of this jurisdiction. For the foregoing reasons we reverse the judgment of the trial court.

*Reversed.*