WILLIAM ARTHUR GREENE

*v.*

HUGH S. EDWARDS, M. D., *etc.*

(No. 14736)

Decided March 11, 1980.

*William B. Talty* for petitioner.

*Chauncey H. Browning,* Attorney General, *David R. Brisell,* Assistant Attorney General, for respondent.

PER CURIAM:

William Arthur Greene, the relator in this original habeas corpus proceeding, is involuntarily confined in Pinecrest Hospital under an order of the Circuit Court of McDowell County entered pursuant to the terms of the West Virginia Tuberculosis Control Act, *W.Va. Code,*

26-5A-1, *et seq.* He alleges, among other points, that the Tuberculosis Control Act does not afford procedural due process because: (1) it fails to guarantee the alleged tubercular person the right to counsel; (2) it fails to insure that he may cross-examine, confront and present witnesses; and (3) it fails to require that he be committed only upon clear, cogent and convincing proof. We agree.

A petition alleging that Mr. Greene was suffering from active communicable tuberculosis was filed with the Circuit Court of McDowell County on October 3, 1979. After receiving the petition, the court, in accordance with the terms of *W.Va. Code*, 26-5A-5, fixed a hearing in the matter for October 10, 1979. The court also caused a copy of the petition and a notice of the hearing to be served upon Mr. Greene. The papers served did not notify Mr. Greene that he was entitled to be represented by counsel at the hearing.

After commencement of the October 10, 1979 hearing, the court, upon learning that Mr. Greene was not represented, appointed an attorney for him. The court then, without taking a recess so that the relator and his attorney could consult privately, proceeded to take evidence and to order Mr. Greene's commitment.

*W.Va. Code*, 26-5A-5, the statute under which the commitment proceedings in this case were conducted, provides in part:

> "If such practicing physician, public health officer, or chief medical officer having under observation or care any person who is suffering from tuberculosis in a communicable stage is of the opinion that the environmental conditions of such person are not suitable for proper isolation or control by any type of local quarantine as prescribed by the state health department, and that such person is unable or unwilling to conduct himself and to live in such a manner as not to expose members of his family or household or other persons with whom he may be associated to danger of infection, he shall report the facts to

the department of health which shall forthwith investigate or have investigated the circumstances alleged. If it shall find that any such person's physical condition is a health menace to others, the department of health shall petition the circuit court of the county in which such person resides, or the judge thereof in vacation, alleging that such person is afflicted with communicable tuberculosis and that such person's physical condition is a health menace to others, and requesting an order of the court committing such person to one of the state tuberculosis institutions. Upon receiving the petition, the court shall fix a date for hearing thereof and notice of such petition and the time and place for hearing thereof shall be served personally, at least seven days before the hearing, upon the person who is afflicted with tuberculosis and alleged to be dangerous to the health of others. If, upon such hearing, it shall appear that the complaint of the department of health is well founded, that such person is afflicted with communicable tuberculosis, and that such person is a source of danger to others, the court shall commit the individual to an institution maintained for the care and treatment of persons afflicted with tuberculosis ..."

It is evident from an examination of this statute that its purpose is to prevent a person suffering from active communicable tuberculosis from becoming a danger to others. A like rationale underlies our statute governing the involuntary commitment of a mentally ill person, *W.Va. Code*, 27-5-4.

In *State ex rel. Hawks v. Lazaro*, ____ W.Va. ____, 202 S.E.2d 109 (1974), we examined the procedural safeguards which must be extended to persons charged under our statute governing the involuntary hospitalization of the mentally ill. We noted that Article 3, Section 10 of the West Virginia Constitution and the Fifth Amendment to the United States Constitution provide that no person shall be deprived of life, liberty, or property without due process of law; we stated:

"This Court recognized in the case of *Schutte v. Schutte*, 86 W.Va. 701, 104 S.E. 108 (1920) that, 'liberty, full and complete liberty, is a right of the very highest nature. It stands next in order to life itself. The Constitution guarantees and safeguards it. An adjudication of insanity is a partial deprivation of it.' " *State ex rel. Hawks v. Lazaro, supra,* at p. 122.

We concluded that due process required that persons charged under *W.Va. Code,* 27-5-4, must be afforded: (1) an adequate written notice detailing the grounds and underlying facts on which commitment is sought; (2) the right to counsel; (3) the right to be present, cross-examine, confront and present witnesses; (4) the standard of proof to warrant commitment to be by clear, cogent and convincing evidence; and (5) the right to a verbatim transcript of the proceeding for purposes of appeal.

Because the Tuberculosis Control Act and the Act for the Involuntary Hospitalization of the Mentally Ill have like rationales, and because involuntary commitment for having communicable tuberculosis impinges upon the right to "liberty, full and complete liberty" no less than involuntary commitment for being mentally ill, we conclude that the procedural safeguards set forth in *State ex rel. Hawks v. Lazaro, supra,* must, and do, extend to persons charged under *W.Va. Code,* 26-5A-5. Specifically, persons charged under the act must be afforded: (1) an adequate written notice detailing the grounds and underlying facts on which commitment is sought; (2) the right to counsel and, if indigent, the right to appointed counsel; (3) the right to be present, to cross-examine, to confront and to present witnesses; (4) the standard of proof to be by clear, cogent and convincing evidence; and (5) the right to a verbatim transcript of the proceedings for purposes of appeal.

We noted in *State ex rel. Hawks v. Lazaro, supra,* that where counsel is to be appointed in proceedings for the involuntary hospitalization of the mentally ill, the law contemplates representation of the individual by the appointed guardian in the most zealous, adversary fashion

consistent with the Code of Professional Responsibility. Since this decision, we have concluded that appointment of counsel immediately prior to a trial in a criminal case is impermissible since it denies the defendant effective assistance of counsel. *State v. Bush,* ___ W.Va. ___, 255 S.E.2d 539 (1979). It is obvious that timely appointment and reasonable opportunity for adequate preparation are prerequisites for fulfillment of appointed counsel's constitutionally assigned role in representing persons charged under *W.Va. Code,* 26-5A-5, with having communicable tuberculosis.

In the case before us, counsel was not appointed for Mr. Greene until after the commencement of the commitment hearing. Under the circumstances, counsel could not have been properly prepared to defend Mr. Greene. For this reason, the relator's writ must be awarded and he must be accorded a new hearing.

We note that our interpretation of the West Virginia Tuberculosis Control Act, *W.Va. Code,* 26-5A-1, has radically changed the administration of that law. The same situation existed in our opinion in *State ex rel. Hawks v. Lazaro, supra.* There, we concluded that we would not entertain a habeas corpus proceeding because of the due process constitutional infirmities of the statute until a relator demonstrated that he had made application for a new hearing before the circuit court of the county from which he was committed. We also concluded that we would not entertain a habeas corpus proceeding until the relator showed one of the following: (1) that his petition had been denied in the lower court; (2) that the procedures employed at the hearing in the lower court were violative of the rules set forth in the opinion or of other due process requirements; (3) that the petition had not been acted upon within a reasonable time. We adopt this same policy for persons presently incarcerated under *W.Va. Code,* 26-5A-5.

For the reasons stated above, the writ of habeas corpus is awarded, and the relator is ordered discharged, but such discharge is hereby delayed for a period of

thirty days during which time the State may entertain further proceedings to be conducted in accordance with the principles expressed herein.

*Writ as moulded awarded.*