**UNITED STATES of America,**
**Appellee,**

v.

**Adolfo Troadio SANCHEZ, a/k/a "Fifo",**
**Defendant-Appellant.**

**No. 710, Docket 72-1206.**

United States Court of Appeals,
Second Circuit.

Argued April 7, 1972.

Decided May 2, 1972.

Barbara Ann Rowan, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., and Peter F. Rient, Asst. U. S. Atty., S. D. of New York, on the brief), for appellee.

Irwin Rochman, New York City, for defendant-appellant.

Before CLARK, Associate Justice,[*] LUMBARD, Circuit Judge, and TYLER, District Judge.[**]

LUMBARD, Circuit Judge:

Adolfo Sanchez appeals from his jury conviction and 18 months sentence for conspiracy to distribute and possess with intent to distribute narcotic drugs in violation of 21 U.S.C. §§ 812, 841(a) (1) and 841(b) (1) (A). There was ample evidence to support the conviction, and as there was no error in the conduct of this trial, we affirm the conviction.

The only claim of error which merits comment relates to the denial by the trial judge of Sanchez' motion for a continuance until a co-defendant, Marcia Alonzo, who had pleaded guilty to the indictment's fourth count, had been sentenced, at which time appellant expected she would be willing to testify on his behalf. Sanchez also complains that it was error for the district court to deny his motion for a new trial so that Marcia Alonzo could be called as a witness.

The proof showed that Marcia Alonzo had sold ⅛ kilo of cocaine for $1,700 to federal narcotics agent Salvemini on September 7, 1971, at her apartment at 599 West 190th Street, Manhattan, and another ½ kilo of cocaine for $7,000 on October 14. In connection with the second transaction Alonzo called a telephone number in Union City, New Jersey. Her connection, someone called "Fifo," then returned the call. The appellant lives in Union City and was known as "Fifo." Salvemini met with Alonzo again on October 18 to arrange a larger sale, and on October 20 she introduced him to "Polaco" Garcia at her apartment. During this meeting a green and white 1968 Cadillac, driven by Garcia, registered to Sanchez at his address in Union City, New Jersey, was parked outside. That evening Sanchez, referred to by Alonzo as Garcia's partner, appeared with Garcia. Sanchez was again present the next afternoon in Alonzo's apartment with Garcia and Alonzo when Garcia informed Salvemini that everything had been arranged for the sale of two kilos of heroin. Salvemini paid $56,000 to Alonzo, and she was arrested when she subsequently delivered the heroin to Salvemini in a black and white plastic shopping bag.

[*] United States Supreme Court, retired, sitting by designation.

[**] Of the United States District Court for the Southern District of New York, sitting by designation.

On November 1, 1971 an indictment was filed against Sanchez and five others. Two defendants became fugitives before the indictment was filed. On December 8, Marcia Alonzo pleaded guilty to the Fourth Count of the indictment which charged distribution of heroin on October 21st. Trial of Sanchez, Garcia and Raquel Maisonet began on December 27th.

On December 16, eleven days before trial began, counsel for Sanchez interviewed Alonzo in the presence of her attorney. Counsel alleges, and we credit his assertion, that he believed that if Alonzo were called as a witness her testimony would exculpate Sanchez. Counsel further alleges in this appeal, as he did to Judge Pollack, that Alonzo said that if she was called as a witness before she was sentenced she would refuse to testify, and if compelled she would testify adversely to the party calling her. Counsel thus applied for an adjournment of Sanchez' trial until Alonzo had been sentenced "so that any barriers that might exist or did exist with respect to her willingness to testify could be removed" and counsel could call her knowing that she would not assert her Fifth Amendment privilege.

Judge Pollack denied the motion and advised counsel to serve process on Alonzo. When the case was called for trial on December 27 counsel for Sanchez again sought a continuance. Judge Pollack again denied the application and told counsel that, if Sanchez wished, the court would issue whatever process was necessary to bring Alonzo to court from jail, where she had been remanded following her guilty plea. Judge Pollack explained his reasoning as follows:

"Your application is based on a lot of speculations and hypotheses and your own conclusions. The way to get a witness' testimony in court is to bring that witness in by voluntary or compulsory process. You have chosen not to do either.

"Your application so far as adjourning this trial or severing Mr. Sanchez is denied. The arrangement for your substitution as an attorney for Mr. Atlas was clear and unambiguous. This case was set for trial for December 27 at some inconvenience to myself; I believe Mr. Rosenthal made himself ready to be prepared to go forward with this trial, and I declined to allow you to be substitute attorney some weeks ago when you were ambiguous in your response as to whether you would be ready or not.

"You then came in a week later and told me you would be ready to go to trial.

"A week thereafter you raised this point about Marcia Alonzo for the first time. It isn't the function of the Court to manipulate witnesses or to participate in any such effort. If you desire a witness present, the Court will make all of the Court's facilities available for compulsory process. Other than that, I have no interest in the manner in which you proceed.

"Your application for severance and for other relief is denied."

Sanchez never sought to secure the attendance of Alonzo, and accordingly no subpoena was ever served on her. At trial Sanchez offered no evidence in his defense. Garcia testified and denied any participation in the narcotics transactions. He said that Sanchez was a friend whom he paid to drive him to work. The jury convicted both Sanchez and Garcia on December 30. When Sanchez was sentenced on February 17, 1972, he moved for a new trial on the ground of newly discovered evidence, alleging that Alonzo—who had been sentenced on January 25 to ten years' imprisonment—was then willing to testify on his behalf. Judge Pollack denied the motion.

■■ The only way adequately to establish unwillingness of a witness to testify is to compel the presence of the witness and test the question before the court. Judge Pollack pointed this out to counsel but counsel deliberately chose to do otherwise. Of course, the test need not take place before the jury. Prelimi-

nary inquiry could be conducted outside the presence of the jury. At that time the court could instruct the witness in light of any reluctance expressed by the witness or any question raised by counsel for the witness.

It was pure speculation on the part of counsel that Alonzo would refuse to testify if compelled to appear. Witnesses often attempt to avoid testifying by threatening to refuse and implying that if compelled they will give evidence unfavorable to the party compelling their appearance. When these measures fail they often give evidence. In denying the motion for a new trial, Judge Pollack pointed out that just a few days earlier in a trial before him a witness had threatened to exercise his Fifth Amendment privilege but when called had testified nonetheless.

■ A defendant is entitled to every assistance which the court can give in compelling the attendance of witnesses and requiring them to give evidence, short of violating any rights they may properly claim under the Fifth Amendment. If a witness has already pleaded guilty to an offense he may no longer claim the privilege as to that offense. The rights of the witness can be explored and determined at a hearing before the trial judge outside the presence of the jury. Even if the witness refuses to testify, regardless of whether it be for good reason or not, that is seldom a reason for postponing the trial. Were the rule otherwise indefinite adjournments of criminal trials might be had.

■■ A prompt disposition of criminal trials is of paramount importance. Once the trial judge has fixed a date and the parties and their counsel have made arrangements accordingly, as had been done here, no postponement should be granted except for definite and certain reasons going to the heart of the fairness of the trial. We think the course followed by the trial judge was altogether suitable to the circumstances.

Judgment affirmed.