357 S.E.2d 759

**STATE of West Virginia**

v.

**Susan Delores McCALLISTER.**

**No. 17230.**

Supreme Court of Appeals
of West Virginia.

May 15, 1987.

---

Gayle Fiedler, Asst. Atty. Gen., for appellant.

Scott R. Smith, L. Robert Pettini, Wheeling, for appellee.

BROTHERTON, Justice:

This is an appeal from a judgment of the Circuit Court of Ohio County, which found the defendant, Susan Delores McCallister, guilty of aiding and abetting Duffy McCallister in the commission of the offense of aggravated robbery. She was sentenced to ten years imprisonment.

At 3:00 a.m. on December 21, 1984, Susan McCallister was at "My Club" in Wheeling, trying to get her old job back as a barmaid. Sometime after that, Duffy McCallister, Susan's brother-in-law, came in, recognized her, and they began to talk. My Club closed at 3:30 a.m., and the pair went to the Flamingo until approximately 4:30 a.m., when it closed. Shortly after that Susan decided to call Leroy Ullom, allegedly to buy some valiums. Ullom allegedly agreed that they could come over, and shortly thereafter they arrived by cab.

After arriving at the Ullom residence, Susan almost immediately went to a back bedroom to help a friend, Penny Haught, Mr. Ullom's housekeeper. Haught had earlier burned her stomach and leg when she spilled a pot roast on herself while taking it out of the oven. Susan helped Haught change bandages covering her wound. Duffy, in the meantime, suddenly became irrational. Wielding a knife and a gun, he took $30.00 from Leroy Ullom and then herded Ullom and Haught into the bedroom, where he threatened and beat both of them while demanding money and drugs. He shot four bullets during the foray, two into the wall and two into a concrete floor, one near Susan. Although he never struck Susan, he warned her not to come into the room and pushed her away at one point.

After almost two hours, Gerald Hamilton arrived at the house. Hamilton knew Duffy and talked with him and managed to calm him down. Duffy agreed to leave and a taxi was called. The cab arrived at the house, but apparently the driver saw the gun and quickly left. Hamilton claims at this point that he was forced by Susan McCallister to drive them to the Wheeling Inn, a hotel, at knife point. Upon arriving at the hotel, Susan rented a room under the name of Sue Stillwell and helped Duffy into the room, as he was now succumbing to the effects of drugs and alcohol. Shortly after she got in the room, Susan called Ullom to promise him his money back.

Penny Haught, however, had already called the police. When the police arrived at Ullom's house, they were informed by Ullom and Haught that Duffy McCallister had beaten and robbed them. Neither victim reported Susan McCallister as having done anything wrong. The police obtained an arrest warrant for Duffy for malicious assault, and then went to the Wheeling Inn and arrested both Duffy and Susan, the latter for aiding and abetting. The gun and the knife were found in Susan's purse.

The magistrate testified that Susan was adamant about her innocence during the half-hour arraignment proceedings, and the two officers, also at the arraignment, agreed that she denied having any part in Duffy's conduct, and made no statement about her participation in the beating and robbery. However, at trial Detective Frank Sovinsky claimed she made a short oral confession to him, admitting that she and Duffy went to the house, both intending to rob Ullom.

Both of the victims, Penny Haught and Leroy Ullom, stated that Susan had nothing to do with the crime and was powerless to stop it.

I.

Susan McCallister was charged with aiding and abetting Duffy McCallister during the robbery. Although there was ample evidence to show aiding and abetting

after the robbery, she was immune to prosecution from this crime based on W.Va. Code § 61–11–6 (1984).[1]

▮▮▮ Nevertheless, the prosecution introduced evidence showing Susan aiding and abetting Duffy after the crime in order to show the element of unlawful intent. Evidence of another crime may be introduced in a case if it is necessary to show intent.[2] However, the jury should be cautioned that the evidence of the other crime is not to be considered on the issue of guilt for the crime charged. In this case such a cautionary instruction was requested and refused.

> It is customary to give the jury a limiting instruction with regard to its consideration of a collateral crime. This instruction generally provides that the evidence of a collateral crime is not to be considered as proof of the defendant's guilt on the present charge, but may be considered in deciding whether a given issue or element relevant to the present charge has been proven. When a defendant requests this limiting instruction, it must be given.

Syl. pt. 9, *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). Furthermore, the jury should have been instructed that she could not have been prosecuted solely for her actions after the robbery. The failure to give the requested cautionary instruction prejudiced Susan and requires reversal.

### II.

The oral confession which was made to Detective Sovinsky was not immediately recorded in the police reports and was not produced until two weeks after the State had failed to make a case at a preliminary hearing. Detective Sovinsky's reason for the delay was that he went on vacation and did not have the time to put the confession into the report. Susan McCallister asserted that the confession was contrived, and that the reason for its fabrication was the State's failure at the preliminary hearing. She attempted to inquire into this point at trial, but was prevented by the court.

▮▮ We agree that the failure at the preliminary hearing shows a motive for fabrication which is an example of bias. A witness may be cross-examined for possible bias. *See, e.g., State v. Cook,* 175 W.Va. 185, 332 S.E.2d 147, 158 (1985).

▮▮▮ A confession is always very important evidence. It is hard for a jury to ignore a confession. Thus a defendant, in order to receive a fair trial, must be able to inquire into the reliability of the confession. This is particularly true where, as in this case, the confession contained several inherent problems with reliability. There were several faults with the confession, which made it far from perfect evidence. The confession was made only orally and no attempt was made to reduce it into writing or tape it. Only one witness heard the confession. No written police record was made of this confession until fourteen days after it was allegedly made. This is somewhat explained by the fact that Detective Sovinsky went on vacation after that shift, but the record shows that he had three hours left to work on his shift after

---

1. W.Va.Code § 61–11–6 (1984) states:

 In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; and every accessory after the fact shall be confined in jail not more than one year and fined not exceeding five hundred dollars. But no person in the relation of husband and wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity, or servant to the offender, who, after the commission of a felony, shall aid or assist a principal felon, or accessory before the fact, to avoid or escape from prosecution or punishment, shall be deemed an accessory after the fact.

2. Syllabus point 12 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), states:

 The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

the confession had been made. The officer's rendition of the facts of the confession are somewhat suspect, in that he claimed that he tried to talk her out of confessing, despite the fact that he admitted having a very low opinion of her, but she confessed over his protests. Any evidence which would tend to show further problems of reliability, such as evidence of a motive for fabrication, would be very important to the defense. It was error not to allow the defense to inquire into this point.

### III.

At trial Duffy McCallister was called as a witness. Acting pursuant to counsel's advice, Duffy refused to testify on the grounds that it could incriminate him. Duffy's counsel told the court, however, that "there is no question in my mind that the material he could provide the defendant under oath as a witness on her behalf would be clearly exculpatory regarding her charge of aiding and abetting" and "at least two specific points would be very clearly exculpatory of the defendant that's on trial today." The defense then moved for a continuance so that Duffy might be allowed to testify at a later date, after his trial was over. This motion was refused by the trial court.

 The determination of whether a continuance should be granted is a matter within the sound discretion of the trial court and will not be disturbed, absent an abuse of that discretion. *See* syl. pt. 4, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976).

 In looking to whether a trial court abused its discretion in whether to grant a continuance due to the absence of a witness, we look to several factors. The moving party must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; [3] (3) that a good possibility exists that the testimony will be secured at some later date; [4] and (4) the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice.[5]

 In the case before us, there is no question that Duffy McCallister could have presented relevant, important evidence. His attorney made it clear to the trial court that the evidence would be quite helpful to the determination of the issue at hand. There is also no question that Susan McCallister made a diligent effort to procure his attendance. Nevertheless, at that time it was likely that Duffy's trial would extend over an unreasonable amount of time, thereby interrupting the orderly flow of the judicial process. For this reason, we find no abuse of discretion by the trial court below. We do note, however, that since the case is being reversed, upon remand Duffy may be available as a witness and hopefully moot this issue.

Because there were serious errors in the trial court's decision which mandate a reversal, the decision of the Circuit Court of Ohio County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

3. *See State v. Vance,* 168 W.Va. 666, 673, 285 S.E.2d 437, 442 (1981).

4. *See State v. Mays,* 172 W.Va. 486, 307 S.E.2d 655, 659 (1983).

5. *See United States v. Sanchez,* 459 F.2d 100, 103 (2nd Cir.1972). A motion for continuance is always viewed more favorably when made before a jury has been impaneled or witnesses subponaed and the time requested is reasonably brief.