376 S.E.2d 834

**STATE of West Virginia**

v.

**Herman D. CATLETT.**

**No. 17927.**

Supreme Court of Appeals of
West Virginia.

Dec. 13, 1988.

Arthur A. King, Martinsburg, for appellant.

Charles G. Brown, III, Atty. Gen., for appellee.

NEELY, Justice:

The body of Charles Arvin was found in his vehicle on 1 July 1984, just outside Martinsburg, West Virginia. The victim's car was seen two nights before, parked at the residence of appellant, Herman Catlett, and his girlfriend, Penny Stanley. The body was covered in household trash that included an envelope addressed to appellant, and several articles containing Ms. Stanley's fingerprints.

Appellant and Ms. Stanley were subsequently arrested and charged with the murder. Appellant was released on bond while Ms. Stanley remained incarcerated. Diana Cook–Risavi was appointed to represent Ms. Stanley. Both appellant and Ms. Stanley were indicted in October, 1984, for the first degree murder of Mr. Arvin. Mrs. Risavi began negotiating a plea agreement for Ms. Stanley. In January, 1985, Mrs. Risavi joined the prosecuting attorney's staff and withdrew as Ms. Stanley's counsel. Ms. Stanley was then represented by another lawyer, and made an agreement to plead guilty to being an accessory after the fact and to testify truthfully at appellant's trial.

Ms. Stanley testified at appellant's trial that: the victim came to their house on 29 June 1984; she went onto the front porch while appellant and the victim talked; and she saw the victim dead on the floor when appellant called her back in to the kitchen. Ms. Stanley also testified that she saw a club in the sink with water running over it to wash off blood. Finally, Ms. Stanley testified that the victim often sold drugs to appellant in the past, and that appellant recovered twenty valium pills and approximately $900 cash from the victim after murdering him. Ms. Stanley admitted that she helped appellant put plastic bags over the body and drag it to the victim's car. Appellant then drove the car away with the victim's body in it.

Several days before trial, the alleged murder weapon, a tree branch, was discovered in the basement of the residence of Ms. Stanley and appellant. Defense counsel moved the court for a continuance so appellant could test the "tensile" strength of the branch, which motion the trial court denied.

During a pre-trial suppression hearing, defense counsel cross-examined a police witness for the state regarding the victim's watch that was found with the body. Noticing a date marked on the watch, counsel asked the witness if he had put any identification marks on the watch. When the witness replied that he had not, counsel questioned:

Q. "But you don't know how those marks got on there?
A. I didn't put them on there so I would imagine you would have.
Q. What else are you imagining.
A. That's about all."

Defendant later moved for a mistrial arguing that the witness's statement, and a subsequent newspaper article, amounted to a prejudicial accusation that defense counsel had tampered with evidence. The trial court denied the motion for a mistrial.

After his conviction for first degree murder, appellant sought and was granted an examination to determine his mental competence. Appellant was examined at the Eastern Panhandle Mental Health Center

by Dr. Forestandi, a psychologist whose report stated that appellant told him that he did not tell his lawyer the details of the crime because his lawyer was state-appointed, and he "always thought the state works for the state." Based on the doctor's report, appellant's counsel made a motion for a new trial, the court held a hearing at which appellant testified, and the court denied appellant's motion.

Appellant appealed his conviction to this Court, and assigns as error the trial court's (1) denial of his motion to recuse the prosecuting attorney; (2) denial of his motion for a continuance to test the strength of the murder weapon; (3) denial of his motion for a mistrial; and (4) denial of his motion for a new trial based on after-discovered psychological evidence. We find no merit to any of these assignments and affirm the conviction.

## MOTION TO RECUSE

■ Appellant argues that the prosecuting attorney should have been recused because Mrs. Risavi was first appointed to represent appellant's girlfriend, Ms. Stanley, and then became a member of the prosecutor's staff before appellant's trial. Appellant was convicted in part on the basis of Ms. Stanley's testimony against him.

In support of his argument, appellant cites *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974), and *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978). However, both of these cases involved prosecutors who had dealings with the defendant himself, not with a co-defendant or witness. Such cases have no application to the situation presented here. We can see no prejudice resulting to defendant from the fact that a member of the prosecutor's office had originally represented appellant's girlfriend who testified against

him. Apparently Ms. Stanley was considering testifying against appellant shortly after she was indicted and while still represented by Mrs. Risavi. The fact that she ultimately did testify against appellant and that Mrs. Risavi was a member of the prosecutor's office at the time of the trial did not prejudice appellant, nor did it put the prosecutor in a position of representing conflicting interests. Mrs. Risavi had represented Ms. Stanley, not the appellant. Nowhere is it suggested that while representing Ms. Stanley, Mrs. Risavi had any contact with appellant. Therefore, we find no error in the trial court's denial of appellant's motion to recuse the prosecuting attorney.

## CONTINUANCE

■ Appellant contends the trial court committed reversible error by denying his motion for a continuance to enable him to run a "tensile strength" test on the alleged murder weapon that was discovered just prior to the trial.[1]

A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion. Syllabus Point 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979).

Here, the state had the tree branch analyzed and found no traces of latent fingerprints, blood or hair on it. The branch, measuring an inch and a half in diameter, was broken into two pieces, one of which was split. The autopsy revealed that the victim died from multiple fractures of the skull around the brain. Appellant contends he should have been allowed to have a test run to determine the "tensile" or breaking strength of the branch. In fact, the branch was apparently broken by appellant's use

---

1. Appellant cites *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980). In Syllabus Point 1 of that case we stated:
   It is error to refuse a continuance to allow a defendant to obtain evidence which is critical to his defense, the existence of which was discovered only shortly before trial.
   In that case, we held that because defendants' attorneys were only appointed twelve and seven

days, respectively, before defendants' felony trials, it was error for the trial court to refuse defendants' requests for continuances. However, the right to effective assistance of counsel is a fundamental, constitutional right and this Court's holding in *Demastus* does not inform our decision on the quite different facts here before us.

of it to kill the victim. Under these circumstances, we cannot say that the trial court abused its discretion by denying appellant's motion for a continuance because the capacity of the weapon to inflict a mortal wound could not have become a serious issue of contention in the trial and the motion was largely dilatory.

## MOTION FOR MISTRIAL

■ Appellant assigns as error the trial court's failure to grant him a mistrial due to the state's witness's suggestion, during a suppression hearing, that defense counsel may have marked a date on the victim's watch. However, appellant cites no authority and makes no argument in support of this assignment in his brief, and we find it sufficiently without merit that is not fairly raised.

## COMPETENCE

■ Appellant argues the trial court committed reversible error by not granting his motion for a new trial based on after-discovered psychological evidence. On appellant's post-conviction motion, the court ordered appellant to undergo a psychological examination to determine his competence to stand trial. The psychologist did not testify in the hearing on the subsequent motion for a new trial, but his report was allowed into evidence. Appellant told the psychologist that he didn't tell his state-appointed lawyer the details of the crime because he "always thought the state works for the state." [2] The report stated that appellant has a history of drug abuse and "marginal intellectual ability" that results in a "simplistic" world view and a limited ability to make sound judgments.

The test for a defendant's competence to stand trial was stated in Syllabus Point 1 of *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976):

No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him.

Appellant argues that because of his mistaken belief that his court-appointed attorney was not truly on his side, we should reverse his conviction and grant him a new trial. In Syllabus Point 10 of *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966), we provided five criteria that newly-discovered evidence must meet in order to merit a new trial.

A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. Point 1, syllabus, *Halstead v. Horton*, 38 W.Va. 727 [18 S.E. 953]. Point 2, syllabus, *State v. Spradley*, 140 W.Va. 314 [84 S.E.2d 156].

We find that appellant's evidence fails to meet criteria (2) and (4) of this test.

Appellant was represented by his attorney from August, 1984, through the trial in January, 1986. Apparently, at no point during this time, which included several pre-trial motions, did it occur either to appellant or his attorney that appellant was

---

**2.** Appellant took the stand during this hearing and corroborated his earlier statement to the psychologist.

incapable of consulting with his attorney and assisting with his defense. Appellant may well have exercised poor judgment in failing to trust his lawyer and reveal the details of the crime; if so, appellant would not be the first to exercise such poor judgment. But poor judgment is not the equivalent of legal incompetence.

Furthermore, we do not believe that even if appellant had absolute trust in his lawyer, and had fully revealed to his lawyer whatever it was he did not reveal, such trust "ought to produce an opposite result at a second trial on the merits." If appellant had some defense that would exonerate him, his mistaken suspicion of his lawyer should not have prevented him from revealing such a defense to his lawyer.

For the reasons stated above, the judgment of the Circuit Court of Berkeley County is affirmed.

AFFIRMED.