599 S.E.2d 862

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**JASON H., Defendant Below, Appellant.**

**No. 31585.**

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2004.

Decided June 30, 2004.

**440**

Darrell V. McGraw, Jr., Attorney General, Ronald L. Reece, Assistant Attorney General, Charleston, for the Appellee.

Gerald R. Linkous, McDowell County Public Defender Corporation, Welch, for the Appellant.

PER CURIAM.

This case is before this Court upon the July 31, 2002, order of the Circuit Court of McDowell County, West Virginia, finding the appellant, Jason H., guilty of malicious assault and adjudicating him to be a juvenile delinquent within the meaning of *W.Va.Code*, 49–1–4 [1998].[1] As a result, the Circuit Court, by order entered on April 7, 2003, directed that the appellant be confined at the Industrial Home for Youth in Salem, West Virginia, for a period of 2 to 10 years or until the appellant reaches the age of 21, whichever comes first. In addition, the appellant was ordered to pay $30,160.93 in restitution.

The finding of malicious assault arose from an incident wherein the appellant repeatedly struck an individual by the name of Billy Atwell (age 18) with a baseball bat. According to the appellant, Atwell was an intruder in the appellant's home, and the appellant's actions were taken in defense of himself and others on the premises. In that regard, the appellant contends that the Circuit Court committed error by failing to apply the correct standard of self-defense where an intruder is present in the home. In addition, the appellant contends that the Circuit Court abused its discretion in denying his motion for a continuance of the adjudicatory hearing based upon the absence of an eyewitness who allegedly would have confirmed the appellant's version of the events. Based upon those contentions, the appellant asks this Court to reverse the adjudication of delinquency.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that the contentions of the appellant are without merit. Accordingly, the orders of the Circuit

---

**1.** The phrase "juvenile delinquent" is defined in *W.Va.Code*, 49–1–4(8) [1998], as a juvenile "who has been adjudicated as one who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult." Malicious assault is a felony offense in West Virginia pursuant to *W.Va.Code*, 61–2–9 [1978].

Court of McDowell County, entered on July 31, 2002, and April 7, 2003, are affirmed.

## I.

## FACTUAL BACKGROUND

In October 2000, the appellant, Jason H., age 17, was living in a house in the Town of Iaeger in McDowell County. Living with him was his girlfriend, Drema M.,[2] age 17, and her 10 month-old infant son. The appellant's acquaintances included Billy Atwell, age 18, whom he had known since the 5th grade. The two often socialized together and, in the words of the appellant, were "best friends." The evidence of the appellant and the evidence of Atwell coincide up to this point. Thereafter, there is a sharp conflict with regard to the incident in question.

According to the appellant, his friendship with Atwell ended because of a dispute over a guitar amplifier, a $90 loan he made to Atwell, and the appellant's suspicion that Atwell had vandalized his home. On the evening of October 31, 2000, the appellant, Drema M. and her infant son were in the appellant's home when Atwell suddenly punched through a plywood panel on the door, reached through and unlocked the dead-bolt and entered. Atwell then swung his fist at the appellant but missed and hit Drema M., causing her to drop the infant. At that point, the appellant grabbed a baseball bat and began striking Atwell. In the meantime, Atwell reached behind himself as if trying to draw a weapon. The appellant never saw a weapon, however, and Atwell was struck with the bat 8 to 10 times.[3] The appellant testified that, during the incident, he feared for his life and for the life of Drema M., especially since Atwell was known to carry various weapons on his person.

On the other hand, Atwell indicated that it was not unusual for him to visit the appellant and that, on October 31, 2000, the appellant specifically invited him to enter the home. Drema M. and her infant son were present, and Atwell and the appellant talked for about 45 minutes. The appellant then made a sudden, unprovoked attack upon Atwell and struck him with the baseball bat 10 to 20 times, initially striking Atwell in the back of the head. Atwell lost consciousness. When he regained consciousness, he was still in the home, law enforcement officers were present, and an ambulance was arriving.

As the appellant acknowledged after viewing a post-incident videotape made by Atwell's father, most of Atwell's injuries from the beating were to the back of his head and to his back.[4] Specifically, Atwell was transported to Welch Emergency Hospital in McDowell County where he received stitches to the back and top of his head. Soon after, he underwent surgery at Charleston Area Medical Center in Kanawha County for a brain hemorrhage. Atwell received continued medical treatment for the back injury.

## II.

## PROCEDURAL HISTORY

A petition was filed in the Circuit Court of McDowell County, West Virginia, charging the appellant, Jason H., with malicious assault and asking the Court to adjudicate him a juvenile delinquent. *W.Va.Code*, 61–2–9

---

**2.** This Court follows its past practice and shall refer to the last names of the underage individuals herein by initials only. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

**3.** With regard to the existence of a weapon, the appellant's testimony was contradictory. As the appellant testified during the adjudicatory hearing:

[Atwell] reached behind his back like he was getting ready to pull something. 'Cause like I said, I didn't know if he was going to pull a gun or knife or what, and when he did he said, I've got something for you. He was pissed off

and he pulled out a knife and that's when I hit him with the bat.

Later during the adjudicatory hearing, the appellant denied seeing Atwell with a knife or any other weapon.

**4.** During the adjudicatory hearing, the appellant testified as follows:

Q. You, of course, watched the videotape that we saw just here a few minutes ago?
A. Right.
Q. Would you agree with me that most of the injuries that Mr. Atwell had are to the back of his head or to his back side? To his back?
A. Yes, sir.

[1978]; *W.Va.Code*, 49–1–4(8) [1998]. Subsequently, on December 11, 2001, the Circuit Court appointed the McDowell County Public Defender to represent the appellant.

On July 24, 2002, an adjudicatory hearing was conducted, without a jury, in the Circuit Court. *W.Va.Code*, 49–5–11 [1998]. Counsel for the appellant moved for a continuance upon the ground that Drema M., a material witness, had not been located. The Circuit Court denied the motion, indicating that the appellant had not made a showing that Drema M. would ever be located. As the adjudicatory hearing proceeded, Atwell and the appellant testified and described the events of October 31, 2000, as set forth above. Billy Atwell's father testified with regard to his son's injuries. At the conclusion of the hearing, the Circuit Court found the appellant guilty of malicious assault. That ruling and the determination of juvenile delinquency were reflected in the order of the Circuit Court subsequently entered on July 31, 2002.

It should be noted that, at the adjudicatory hearing, the appellant relied upon self-defense in justification of his striking of Atwell. Specifically, the appellant testified, as stated above, that during the incident he feared for his life and for the life of Drema M. In that regard, the Circuit Court cited this State's general rule on self-defense as set forth in *State v. Baker*, 177 W.Va. 769, 356 S.E.2d 862 (1987). As syllabus point 1 of *Baker* states: "The amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return." Nevertheless, the Circuit Court rejected the appellant's assertion of self-defense in this case. In particular, the Circuit Court determined that: (1) there was no credible evidence that the appellant believed he was going to receive serious bodily harm from Atwell and (2) the appellant, out of anger, severely beat Atwell. As the Circuit Court observed:

There were strikes all over him, there were stitches down the back of his head; Billy Atwell was severely beaten. * * *

And, to a certain extent, [Jason H.] may have been justified in striking him one time, but he used far more force than was necessary to subdue [Atwell]; he beat him senseless.

A dispositional hearing was conducted on September 4, 2002, at which time the appellant was ordered confined at the Industrial Home for Youth for a period of 2 to 10 years or until the appellant reaches the age of 21, whichever comes first. *W.Va.Code*, 49–5–13 [2002]. In addition, the appellant was directed to pay $30,160.93 in restitution. The Circuit Court stated that the basis of the sentence was "the severity of the crime" and "the lack of remorse." Pursuant to the order of April 7, 2003, the appellant was re-sentenced in the same manner in order to renew the period of appeal to this Court.

## III.

## DISCUSSION

Asking this Court to reverse the findings of malicious assault and delinquency, the appellant contends that the Circuit Court committed error by failing to apply the correct standard of self-defense where an intruder is present in the home. As stated above, the Circuit Court cited *State v. Baker, supra,* which holds that the amount of force that can be used in self-defense is that a person can return deadly force only if he or she reasonably believes that the assailant is about to inflict "death or serious bodily harm." According to the appellant, the correct standard which the Circuit Court should have applied is a modification of the general self-defense rule and is specific to occupants facing an intruder in the home. That standard is reflected in syllabus point 2 of *State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550 (1981), which holds:

The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant reasonably believes deadly force is necessary.

The appellant's contention in that regard, however, is somewhat deprived of significance because, in this case, the transcript of the adjudicatory hearing contains ample testimony to the effect that the appellant was, in fact, threatened with serious bodily injury or death by Atwell. Specifically, the evidence of the appellant indicated that Atwell, who was known to carry various weapons on his person, was reaching behind himself as if trying to draw a weapon out. The appellant stated that he, therefore, feared for his life and for the life of Drema M., and, as a result, he returned the threat with deadly force. Thus, to that extent, the standards set forth in *Baker* and *W.J.B.* are the same, and the appellant was not prejudiced by the Circuit Court's reliance upon the *Baker* case.

The issue, however, concerns the Circuit Court's factual determination that there was no credible evidence that the appellant believed he was going to receive serious bodily harm from Atwell. That determination makes relevant the remainder of the *W.J.B.* standard, that the occupant may use deadly force "if the unlawful intruder threatens imminent physical violence or the commission of a felony[.]"

The *Baker* case, cited by the Circuit Court, involved a female defendant who shot and killed an assailant in a bar. The defendant operated the bar and lived in the basement thereof with another individual. In *Baker*, this Court held that the defendant was entitled to an acquittal based upon self-defense as a matter of law. Although the opinion in *W.J.B.* was cited by the defendant, this Court noted, in *Baker*, that, inasmuch as the defendant did not assert that her standing, in terms of self-defense, was comparable to that of an occupant of a home, such issue would not be addressed by this Court.[5]

Similarly, the appellant never raised the self-defense standard concerning the occupant of a home or dwelling during any of the proceedings below. There is no reference in the record to the *W.J.B.* case. Moreover, there was no objection to the Circuit Court's

reliance on *State v. Baker*. The appellant raises this issue for the first time upon appeal to this Court.

Syllabus point 2 of *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996), holds: "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. pt. 10, *State v. Shrewsbury*, 213 W.Va. 327, 582 S.E.2d 774 (2003); syl. pt. 1, *Miller v. Triplett*, 203 W.Va. 351, 507 S.E.2d 714 (1998); syl. pt. 2, *State v. Craft*, 200 W.Va. 496, 490 S.E.2d 315 (1997). *See also*, syl. pt. 6, *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999), stating that "[t]he responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court."

Consequently, inasmuch as the issue now asserted by the appellant concerning self-defense was not raised below or made a part of the record before the Circuit Court, it is not properly before this Court and is, accordingly, without merit.

In addition, the appellant contends that the Circuit Court abused its discretion in denying his motion for a continuance of the adjudicatory hearing based upon the absence of Drema M., an eyewitness who allegedly would have confirmed the appellant's version of the events of October 31, 2000. The appellant's counsel told the Circuit Court that he and his investigator tried to locate Drema M. but were unsuccessful. Indicating that the appellant had not made a showing that the whereabouts of Drema M. would ever be determined, the Circuit Court denied the motion.

In syllabus point 2 of *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979), this Court held: "A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. pt. 3,

---

5. Footnote 2 of *Baker* states: "The defendant did not urge below nor on appeal that as the co-owner of the bar she had a special standing to utilize self-defense similar to the occupant of a home. * * * As a consequence, we do not address this aspect of the self-defense rule." 177 W.Va. at 771 n. 2, 356 S.E.2d at 864 n. 2.

*In re Mark M.,* 201 W.Va. 265, 496 S.E.2d 215 (1997); syl. pt. 3, *State v. Bonham,* 184 W.Va. 555, 401 S.E.2d 901 (1990); syl. pt. 2, *State v. Catlett,* 180 W.Va. 447, 376 S.E.2d 834 (1988). Moreover, as *Bush* states in syllabus point 3: "Whether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." Syl. pt. 7, *State v. Brown,* 210 W.Va. 14, 552 S.E.2d 390 (2001).

■ More specifically, in *State v. McCallister,* 178 W.Va. 77, 357 S.E.2d 759 (1987), this Court addressed the requirements for a continuance where a witness is unavailable. As syllabus point 4 of *McCallister* holds:

> A party moving for a continuance due to the unavailability of a witness must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; (3) that a good possibility exists that the testimony will be secured at some later date; and (4) that the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice.

Syl. pt. 3, *State v. Snider,* 196 W.Va. 513, 474 S.E.2d 180 (1996); syl. pt. 4, *State v. Cole,* 180 W.Va. 412, 376 S.E.2d 618 (1988).

■ In the case now to be determined, no subpoena to secure the attendance of Drema M. at the adjudicatory hearing, directed to her last known address or otherwise, was requested by the appellant. Nor, at the time the motion for a continuance was made, did the appellant submit to the Circuit Court any affidavits or testimony concerning his efforts to locate her. Nor did counsel for the appellant make a proffer on the record as to what her testimony would be. Inasmuch as the time between the appointment of counsel for the appellant in December 2001 and the adjudicatory hearing in July 2002 involved a number of months within which Drema M. was not located, the appellant should have provided the Circuit Court with a more thorough basis for the motion to continue, as contemplated under *McCallister,* rather than simply asking for more time.

Accordingly, this Court is of the opinion that the Circuit Court's denial of the motion to continue was "protected by the parameters of sound discretion." *Parker v. Knowlton Construction Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).

## IV.

## CONCLUSION

Upon all of the above, the orders of the Circuit Court of McDowell County, West Virginia, entered on July 31, 2002, and April 7, 2003, are affirmed.

Affirmed.

Justice DAVIS dissents and files a dissenting opinion joined by Chief Justice MAYNARD.

DAVIS, J., dissenting.

In this case, the majority affirms Jason H. (hereinafter "Jason") juvenile delinquency because it found him guilty of malicious assault. The majority affirms because Jason did not cite to the circuit court the controlling authority from this Court concerning the right to self-defense in one's home. The majority thus avoids reviewing the sufficiency of the evidence to support Jason's conviction. Because I believe that Jason properly presented his self-defense claim below, I think the majority should have reached the question of whether the State proved its case beyond a reasonable doubt. If it had reached the issue, it would have had to find that Jason's conviction should be reversed.

### A. *Waiver of the correct legal standard and insufficiency review*

The majority opinion observes that our self-defense cases distinguish between self-defense in general and self-defense in one's dwelling. The majority correctly cites Syllabus point 1 of *State v. Baker,* 177 W.Va. 769, 356 S.E.2d 862 (1987) that, "[t]he amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm;

otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return." However, we have a broader rule for self-defense in a dwelling:

> The occupant of a dwelling is not limited in using deadly force against an unlawful intruder to the situation where the occupant is threatened with serious bodily injury or death, but he may use deadly force if the unlawful intruder threatens imminent physical violence or the commission of a felony and the occupant reasonably believes deadly force is necessary.

Syl. pt. 2, *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981).

We further explained the justification for this special rule:

> " '[T]here are strong reasons for recognizing the dwelling as a place of refuge in which the dweller may expect to be free from personal attack even of a nondangerous character, and the trend has been in the direction of holding that an unlawful entry of the dwelling for the purpose of an assault upon some person therein may be resisted by deadly force if this reasonably seems necessary for the purpose "although the circumstances may not be such as to justify a belief that there was actual peril of life or great bodily harm." ' R. Perkins, *Criminal Law* 1024 (1969)."

*Id.* at 609 n. 6, 276 S.E.2d at 554 n. 6. We also observed the "sound policy reasons" justifying this special rule. *Id.* at 611, 276 S.E.2d at 556. We first recognized the continuing "validity to the ancient English rule that a man's home is his castle, and he has the right to expect some privacy and security within its confines." *Id.* at 612, 276 S.E.2d at 556.[1] We further noted that this rule was premised on the protection that the home

offers to "the basic unit of society-the family." *Id.*, 276 S.E.2d at 556.[2] We also observed that the rule was grounded in common sense:

> from the standpoint of the intruder the violent and unlawful entry into a dwelling with intent to injure the occupants or commit a felony carries a common sense conclusion that he may be met with deadly force, and that his culpability matches the risk of danger. We also recognize that there is often a certain vulnerability to the occupant of a dwelling who is forced to confront the unlawful intruder in the privacy of his home, without any expectation of a public response or help.

*Id.*, 276 S.E.2d at 556.

The majority finds that this law is inapplicable because

> [Jason] never raised the self-defense standard concerning the occupant of a home or dwelling during any of the proceedings below. There is no reference in the record to the *W.J.B.* case. Moreover, there was no objection to the Circuit Court's reliance on *State v. Baker*. The appellant raises this issue for the first time upon appeal to this Court.

The majority then concludes, "[c]onsequently, inasmuch as the issue now asserted by [Jason] concerning self-defense was not raised below or made part of the record before the Circuit Court, it is not properly before this Court and is, accordingly, without merit." It therefore does not address whether there was sufficient evidence to convict Jason. I disagree and would find that we should address the question of evidentiary sufficiency.

---

1. The rule continues to retain its validity in England. *See Queen ex rel. Bempoa v. London Borough*, [2002] E.W.H.C 153 ¶ 11 (Q.B. Div'l Ct.).("That an Englishman's home is his castle was an aphorism of our law as long ago as the reign of the first Elizabeth: see *Sendil's case* (1585) 7 Co Rep 6a. It is now almost four hundred years since the principle received its classic formulation in *Semayne's case* (1604) 5 Co Rep 91a at 91b: 'The house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose.' "). An even earlier view is found in

Exodus 22:2 (New Amer. Bible), "[i]f a thief is caught in the act of housebreaking and beaten to death, there is no bloodguilt involved. But if after sunrise he is thus beaten, there is bloodguilt."

2. *See also Queen ex rel. Bempoa*, [2002] E.W.H.C. 153 ¶ 10 ("The integrity of the home is one of the core values of any civilized society. Rightly both the civil law and the criminal law take an exceedingly serious view of any unlawful violation of the home.").

While I agree that "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996). However,

"the 'raise or waive' rule, though important, is a matter of discretion. Thus, like most rules, this rule admits of an occasional exception. Exceptions must be few and far between and, therefore, an appellate court's discretion should not be affirmatively exercised unless the equities heavily preponderate in favor of such a step."

*State v. Salmons*, 203 W.Va. 561, 571, 509 S.E.2d 842, 852 (1998) (quoting *State v. Miller*, 197 W.Va. 588, 598, 476 S.E.2d 535, 545 (1996)). The importance the law attaches to self-defense in one's home and the facts here heavily preponderate in favor of such a step.

Moreover, since Jason argued self-defense below, I am not convinced that he waived his right to insufficiency review by this Court under the correct legal standard. While he might not have cited *W.J.B.* below, it is undisputed that he raised the *issue* of self-defense below and our law (like that of other jurisdictions) supports the recognition that citing authority in support of a legal argument is not necessarily the same thing as raising legal arguments in the first instance, *see Tracy v. Cottrell*, 206 W.Va. 363, 371 n. 4, 524 S.E.2d 879, 887 n. 4 (1999) ("[T]his Court has never held that failing to produce legal authority for an objection at trial, in and of itself, constitutes waiver of the issue for appeal purposes."), especially where the opposing party is on notice of the issue. *See also Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1347 (Fed.Cir.2001) (party may advance additional or new supporting arguments based on the evidence of record to support its claim). A case explaining this doctrine is *United States v. Rapone*, 327 U.S.App.D.C. 338, 131 F.3d 188 (D.C.Cir. 1997). In *Rapone*, a defendant was convicted of contempt of court in a bench trial. While not constitutionally entitled to a jury,

he was statutorily entitled to one. However, his numerous requests to the trial court for a jury did not cite the statute. Both the trial court and the government understood the defendant was seeking a jury trial-albeit on constitutional grounds. On appeal the defendant cited the statute, but the government argued that failure to cite it below waived the issue. *Id.* at 196. The appellate court reversed finding:

The issue, then, is whether [defendant] surrendered his statutory right to a jury trial because he did not bring the statute to the district court's attention during his repeated requests for a jury trial. We hold that he did not. This case is distinguishable from cases in which a litigant attempts to raise an entirely new claim or new issue on appeal. In such cases, "issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C.Cir.1984). We have made exceptions to this rule only in "exceptional circumstances." *Id.* at 1085. In the present case, [defendant] is not attempting to raise the issue of a jury trial for the first time on appeal. Rather, he simply offers new legal authority for the position that he repeatedly advanced before the district court-that he was entitled to have his case tried before a jury.

*Id.* Jason does not now assert an entirely new legal theory, his legal theory is the same here as below-that he acted in self-defense. *Compare Albrecht v. Committee on Employee Benefits*, 360 U.S.App.D.C. 47, 357 F.3d 62, 66 (D.C.Cir.2004) ("By contrast, appellants here present not new legal *authority* for an argument raised in the district court, but rather an entirely new *argument*-that the defendant is not the 'Board of Governors' identified in the complaint. We thus agree with the Board that the argument is waived."). Consequently, when an appellate court reviews a question of law de novo,[3] the court must use its " ' "full knowledge of its own ... precedents." ' " *Rapone*, 131 F.3d

---

3. We, of course, have held that "[t]he determination of whether a circuit court applied the proper legal standard is a question of law we review *de novo*." Syl pt. 1, *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003).

at 197 (quoting *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994)) (quoting *Davis v. Scherer,* 468 U.S. 183, 192 n. 9, 104 S.Ct. 3012, 3018 n. 9, 82 L.Ed.2d 139, 148 n. 9 (1984)). As we have said:

> " 'When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.' "
> *United States National Bank of Oregon v. Independent Ins. Agents of America, Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402, 412 (1993), *quoting Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152, 166 (1991).

*State v. Blake,* 197 W.Va. 700, 706 n. 10, 478 S.E.2d 550, 556 n. 10 (1996). *Accord Forshey v. Principi,* 284 F.3d 1335, 1356 (Fed.Cir. 2002) ("[A]ppellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court."), *overruled on other grounds by Morgan v. Principi,* 327 F.3d 1357 (Fed.Cir. 2003).

Finally, I believe that *Baker*'s refusal to address whether a business owner has a self-defense privilege similar to that of a homeowner is not applicable here. *Baker*'s refusal to address this question stemmed from the fact that Baker did not make that argument either below or in this Court. 177 W.Va. at 771 n. 2, 356 S.E.2d at 864 n. 2 ("The defendant did not urge below nor on appeal that as co-owner of the bar she had a special standing to utilize self-defense similar to the occupant of a home."). Thus, footnote 2 was gratuitous dicta to recognizing that there was out of jurisdiction authority that a business owner has no duty to retreat when attacked in the place of business.[4] Here, by contrast,

there is mandatory authority about an occupant's self-defense rights; precedent under which Jason squarely falls.

By not addressing the sufficiency issue as Jason did not cite *W.J.B.* below, the majority has "occasion[ed] appellate affirmation of [an] incorrect legal result[ ][,]" *Elder v. Holloway,* 510 U.S. at 515 n. 3, 114 S.Ct. at 1023 n. 3, 127 L.Ed.2d at 350 n. 3, as I shall now demonstrate.

## B. Application of law to fact

In order to show that there was insufficient evidence to convict Jason, I begin by reciting the pertinent facts. In late 2000, Atwell borrowed $90.00 from Jason.[5] Atwell gave Jason a "Gibson Amp" to hold until the money was repaid. It appears that the money was supposed to be repaid within five days, but Atwell failed to repay the money. Instead, he began harassing Jason to regain the Gibson Amp.[6]

During the trial, Jason testified that Atwell drove a car recklessly near Jason's prior home. He described the incident as involving "spinning tires," and that Atwell "about run over one of [the neighbor's] granddaughters."[7] Jason also testified that Atwell left a threatening note at a house in which Jason once lived that Atwell "was wanting his f-ing amp, [and] he'd do what it f-ing took [to obtain it]." Jason also testified that around October 30, 2000 "[s]omebody throwed eggs, beat the windows out, spray painted my house, flipped over the tables, broke off the water faucets and filled up the floor with water and everything."[8] Jason said he reported this, giving Atwell's name as a suspect, but nothing was done.

On the evening of October 31, 2000, Jason was in the kitchen of his home with his girlfriend, Drema M., and her 10–month–old son. He testified that while eating, Atwell

---

4. Indeed, Baker's footnote 2 specifically cited the annotation appearing at 41 A.L.R.3d 584 (1972). The full title of this annotation is *Homicide: Duty to Retreat as a Condition of Self–Defense when One is attacked at his Office, or Place of Business or Employment.*

5. The record suggests Atwell was around 17 or 18 years of age at that time.

6. During the trial Atwell denied engaging in the harassing conduct.

7. This incident was reported to the police, but no arrest was made.

8. It appears that Jason was living in the house alone and independent of his parents.

broke in.[9] Thereupon a fight ensued and he struck Atwell with a baseball bat.

At the conclusion of the adjudicatory proceeding, the trial court found Jason was justified in hitting Atwell once, but that further strikes were unjustified. Thus, the court found that the State proved beyond a reasonable doubt that Jason used excessive force.

Jason argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense at all times during the fight with Atwell. Our cases have held that "[o]nce there is sufficient evidence to create a reasonable doubt that [an assault] resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl. pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978). *See also* Syl. pt. 6, *State v. McKinney*, 178 W.Va. 200, 358 S.E.2d 596 (1987) ("Once the defendant meets his initial burden of producing some evidence of self-defense, the State is required to disprove the defense of self-defense beyond a reasonable doubt."). Further, we have held that "[i]t is peculiarly within the province of the [factfinder] to weigh the evidence upon the question of self-defense, and the verdict of a [factfinder] adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence." Syl. Pt. 5, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927). *See* Syl. Pt. 2, *State v. Clark*, 175 W.Va. 58, 331 S.E.2d 496 (1985). This Court has also been careful to note that

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the [factfinder] might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the [factfinder] can find guilt beyond a reasonable doubt. Credibility determina-

tions are for a [factfinder] and not an appellate court.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). While this is a demanding standard, it is not insurmountable. *See, e.g., State v. Cook*, 204 W.Va. 591, 515 S.E.2d 127 (1999) (reversing conviction based on insufficiency of the evidence since the State did not carry its burden of showing beyond a reasonable doubt that the defendant did not act in defense of her husband when she shot the husband's attacker).

This Court observed in *W.J.B.*, 166 W.Va. at 608, 602, 276 S.E.2d at 554 (1981), (internal quotations and citations omitted), that "a person has the right to repel force by force in the defense of his person, his family or his habitation, and if in so doing he uses only so much force as the necessity, or apparent necessity, of the case requires, he is not guilty of any offense[.]" "In addressing the standard by which the reasonableness of an individual's beliefs and actions in self-defense must be judged, we have recognized that the reasonableness of such beliefs and actions must be viewed 'in [the] light of the circumstances in which he acted at the time and not measured by subsequently developed facts.' " *State v. Plumley*, 184 W.Va. 536, 540, 401 S.E.2d 469, 473 (1990) (per curiam) (quoting *State v. Reppert*, 132 W.Va. 675, 691, 52 S.E.2d 820, 830 (1949)).

In the instant proceeding, the circuit court found that Jason "may have been justified in striking [Atwell] one time, but he used far more force than was necessary to subdue [Atwell]; he beat him senseless." In other words, the circuit court found that Jason's first blow was justified as self-defense, but further blows were excessive. *See* Syl. pt. 1, in part, *State v. Miller*, 85 W.Va. 326, 102 S.E. 303 (1919) ("One assaulted by another is not bound to retreat, but if he ... unnecessarily pursues his assailant after the latter has declined the combat and inflicts upon him bodily injury, he is guilty of assault and battery."); Syl. pt. 8, in part, *Shires v. Boggess*, 72 W.Va. 109, 77 S.E. 542 (1913) ("One

---

**9.** Atwell gave a different version of what occurred. According to him, he knocked on Ja- son's door and was invited into the home.

in his own house need not stand and take without resisting with force even slight assaults of an intruder or trespasser. . . . But he must not use force disproportioned to that used against him[.]").

In view of the circuit court's finding that self-defense was initially appropriate, I will examine Jason's testimony on how the confrontation began.[10] Jason described what occurred after Atwell broke into the home as follows:

Q. Did he swing at you?

A. He [Atwell] swung at me. He swung like he was going to hit toward me. And when he did, he hit Drema and made her drop [the baby]. And that's when he jumped back up trying to get hold of me. And that's when I hit him, I come up like this right here (indicating). And hit him with a ball bat right here. That's how he got the mark on his jaw right there. That was the first hit that was swung.

. . .

Q. And what happened then? Did he fall?

A. Yes, sir. He started staggering around his feet, you know what I mean, kind of where it knocked him off balance and he kind of reached down in the back of his pants trying to get something. . . .

. . .

Q. So the first lick you swung with the bat, he just staggered backwards?

A. When I hit him, he just kind of like stared at me like I didn't do nothing to him, you know what I mean? Then he started staggering around.

Q. And when he was going down, you hit him, is that what you're saying?

A. Yeah.

Q. And you hit him 8 to 10 times total?

A. Yeah.

Q. Did you do this out of anger?

A. No, out of saving my life. I thought he come in there to kill me. I didn't have

nothing against Billy. When he come to pawn the amp, I did it as a favor, and then he got mad. And if I'd known that would be the cause of all of this, I'd just give him the amp back. It ain't worth $90, you know what I mean?

The State contends this case is similar to *State v. Wykle*, 208 W.Va. 369, 540 S.E.2d 586 (2000) (per curiam), and that we should affirm on that authority. I disagree. In *Wykle* the defendant was convicted of unlawful assault. The facts in that case revealed that the victim was the initial aggressor. During an argument with the defendant, the victim slapped the defendant on the head.[11] The defendant retaliated by stabbing the victim nine times. After the jury convicted him, he argued on appeal that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. This Court rejected the argument:

We believe the use of a deadly weapon under the circumstances to be unjustified. Nothing in the record indicated [the victim] possessed a deadly weapon, or that [the defendant] was in imminent danger of death or great bodily harm. [The victim] confronted [the defendant] with nothing more than his bare hands. Both men were relatively the same size in height and weight. While our cases would support the reasonable use of [the defendant's] ·bare hands to repel any further attack by [the victim], we believe the jury properly found that the use of a knife to stab [the victim] nine times was excessive in relation to any reasonably perceived danger.

*Wykle*, 208 W.Va. at 374, 540 S.E.2d at 591.

The decision in *Wykle* is distinguishable from the instant case. In *Wykle*, the victim was invited into the home where the attack occurred. In the instant case, Atwell broke into Jason's home. There was no evidence in *Wykle* that the defendant knew the victim had a reputation for carrying weapons. In the case *sub judice*, Jason testified that he

---

**10.** Atwell testified that he was invited into the home and that he and Jason had a friendly talk for about 45 minutes. At the end of the conversation, he claimed that while preparing to leave, Jason snuck up behind him and struck him. My review of the trial court's oral findings show it

did not give any weight to Atwell's version of how the fight started.

**11.** This attack occurred in the home of a friend of the defendant.

knew that Atwell had on occasion possessed guns, knives and brass knuckles. In *Wykle*, there was no evidence showing that the victim had previously harassed or threatened the defendant. On the other hand, Jason testified to harassing conduct by Atwell that included a threatening note and vandalism of his home.[12] Finally, in *Wykle* we found it significant that there was no real physical size difference between the victim and the defendant. In this case, however, the record fails to show if a size difference existed between Jason and Atwell.

I agree that the circuit court was correct in being concerned about the necessity of Jason striking Atwell more than one time in order to subdue him, as "[o]nce the danger has passed and the defendant can no longer reasonably believe that he is in danger, the law does not excuse [further violence]."*State v. Clark*, 175 W.Va. 58, 62, 331 S.E.2d 496, 500 (1985). However, according to Jason's testimony, repeated blows were necessary because Atwell was not subdued with the first blow and he appeared to be reaching for a weapon. Thus, a critical issue for which the State had the burden, was to show beyond a reasonable doubt that one blow neutralized the threat Atwell posed.

The only evidence the state produced on the issue of the effects of the initial blow to Atwell, was through Atwell. According to him, Jason sneaked up behind him and struck him in the head for no apparent reason. Atwell further testified that the initial blow to the head rendered him defenseless. The circuit court's oral findings show it did not give any weight to Atwell's version of the fight. Consequently, we are left with Jason's testimony that he struck Atwell on the jaw initially, and that this blow did not neutralize Atwell. To rebut Jason's contention that the initial blow did not deter Atwell, the State had to present medical evidence as to what effect the initial blow had on Atwell See *State v. Flippo*, 212 W.Va. 560, 585–586, 575 S.E.2d 170, 195–196 (2002) ("[The defendant] reported that he was attacked and twice knocked unconscious by the alleged intruder.... Dr.

Irvin M. Sopher, former chief medical examiner, testified ... that the bruises to [the defendant's] head were insufficient to render him unconscious."). Absent medical testimony, the state was obligated to call the only other witness to the attack, Drema M., to elicit evidence of the effects of the first blow. *See State v. James*, 211 W.Va. 132, 137, 563 S.E.2d 797, 802 (2002) (per curiam) ("[Defense] counsel retained and exercised full freedom to argue to the [factfinder] the effect of the State having failed to call additional witnesses who might have confirmed or challenged the State's version of the events at issue in the trial."). The State did neither. Consequently, if we put aside Atwell's testimony, we are left to speculate as to what degree of harm the first blow caused and "as an appellate court, cannot speculate that, given the evidence at trial, a jury properly charged would have unanimously agreed beyond a reasonable doubt as to the defendant's guilt." *State v. Hinkle*, 200 W.Va. 280, 288 n. 28, 489 S.E.2d 257, 265 n. 28 (1996). This is, however, exactly what the circuit court did-speculate, and "no person should be condemned as a criminal and punished for a crime when his guilt is shrouded in doubt or uncertainty or rests upon mere speculation or possibility." *State v. Evans*, 136 W.Va. 1, 24–25, 66 S.E.2d 545, 558 (1951) (Haymond, J., dissenting). *See also Phares v. Brooks*, 214 W.Va. 442, 446, 590 S.E.2d 370, 374 (2003) (per curiam) ("We think that a circuit court's order cannot legitimately be based on speculation or divorced from the evidence of record.").

Hence, I "cannot find that the State adduced testimony or other evidence showing that the defendant acted in any manner other than self-defense[,]" because I do not find the State proved the additional blows were excessive beyond a reasonable doubt. *State v. Bates*, 181 W.Va. 36, 39–40, 380 S.E.2d 203, 206–207 (1989) (per curiam). I would reverse because of evidentiary insufficiency and bar retrial. *State v. Baker*, 177 W.Va. 769, 771, 356 S.E.2d 862, 864 (1987) ("In view

---

**12.** See *State v. Richards*, 190 W.Va. 299, 305, 438 S.E.2d 331, 337 (1993) ("[T]he Court has recognized that where a defendant in a malicious wounding or assault case relies on self-defense,

he may properly introduce evidence of the violent or turbulent character of the victim and also evidence of prior threats or attacks of the victim against the defendant.").

of the fact that [Jason] was entitled to a judgment of acquittal, no retrial is permitted and the case is remanded for the entry of such judgment.").

Thus, I respectfully dissent.[13] I am authorized to state that Chief Justice MAYNARD joins in this dissent.

13. Because I do not believe that the majority should have reached the issue of the continu-ance, I express no view on that issue.